**Mia FONTANA, Plaintiff–Appellant,**

v.

**D.E. HASKIN, Defendant–Appellee.**

**No. 99–56629.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 8, 2001

Filed Aug. 22, 2001

---

Shelley Kaufman, Geragos & Geragos, Los Angeles, California, for the plaintiff-appellant.

Vladmir M. Shalkevich, Office of the Attorney General, Los Angeles, California, for the defendant-appellee.

Before: HUG and B. FLETCHER, Circuit Judges and KING,* District Judge.

BETTY B. FLETCHER, Circuit Judge:

The district court dismissed this civil rights action brought under 42 U.S.C. § 1983. We disagree with the district court's narrow reading of the complaint. It adequately alleged a violation of Fontana's civil rights. We reverse and remand for further proceedings.

## I. Facts and Procedural History

In the early morning of August 22, 1997, Mia Fontana ("Fontana" or "plaintiff") was involved in a car accident on a Southern California freeway that left her vehicle off the road. California Highway Patrol ("CHP") Officer Dana Haskin ("Haskin" or "defendant") and Officer Deschepper responded to the scene. They suspected that Fontana was under the influence of alcohol and administered field sobriety tests. Based on these tests, they arrested Fontana for drunk driving, handcuffed her, placed her in the back of their vehicle and drove her to the Orange County jail.

This appeal is primarily about what happened on the ride to the jail. In her complaint Fontana alleges that:

On the way to the station, defendant Haskin sat in the back seat, right next to plaintiff, while his partner drove. During the ride to the station, defendant Haskin wrongfully and inappropriately touched and sexually harassed plaintiff. His conduct included the following: telling plaintiff she had nice legs; telling plaintiff that he could be her "older man"; putting his arm around plaintiff; massaging her shoulders. Defendant's conduct persisted, even after plaintiff asked him to stop. At the police station, defendant Haskin continued making sexual comments to plaintiff, including offering to "help her" in the restroom.

Complaint for Damages ¶ 8. She also testified, in a deposition, that he repeatedly remarked how "she looked like the all-American girl, with light eyes, blond hair, the perfect body and nice legs." He also asked her if she had a boyfriend and tried to find out where she lived. Fontana testified that she was "not certain that the officers were planning to bring her to the police station and felt that they could have been driving around in circles until she accepted Officer Haskin's advances."

Almost a month after she was booked and released,[1] Fontana wrote a letter to the CHP challenging the circumstances of her arrest, but making no allegations about Haskin's behavior. About a month later she made a formal citizen's complaint to the CHP against Haskin for his sexual advances in which she revealed her intention to sue.

Fontana sued Haskin in federal district court. She alleged three causes of action, the first "for Violation of Civil Rights" based on the Fourth and Fourteenth Amendments to the United States Consti-

---

* The Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

1. Eventually, Fontana pleaded no contest to a reduced charge of alcohol related reckless driving. She was sentenced to three years of probation.

tution, and the second and third based on California tort law. The district court granted Haskin's motion for summary adjudication dismissing the first cause of action with prejudice, and dismissing the two state causes of action without prejudice for want of supplemental jurisdiction. Fontana appeals from this ruling. She has concurrently re-filed her remaining claims in state court (after adding several new claims), where the matter is stayed by stipulation pending this appeal.

## II. Jurisdiction and the Standard of Review

Subject matter jurisdiction over Fontana's 42 U.S.C. § 1983 claim is pursuant to 28 U.S.C. §§ 1331 and 1343. The district court exercised its supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the state-law claims. Final judgment was entered on August 11, 1999, and the plaintiff timely filed her notice of appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291.

■■■ A grant of a motion for summary adjudication is reviewed de novo. *Kendall–Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1046 (9th Cir. 1998). The appellate court's review is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c). *Ghotra v. Bandila Shipping, Inc.*, 113 F.3d 1050, 1054 (9th Cir. 1997). The appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.*

## III. Did the Complaint Allege Civil Rights Violations Stemming from Haskin's Allegedly Harassing Behavior?

■ The district court held that Fontana had not "stated a claim for sexual harassment under 42 U.S.C. § 1983." This holding is in error. The first cause of action in the complaint is entitled "By Plaintiff Mia Fontana against Defendant D.E. Haskin for Violation of Civil Rights."[2] The first paragraph of this section "incorporates and realleges" all of the paragraphs that preceded it in the complaint. Paragraph eight that we quote above, which describes Haskin's allegedly harassing behavior, is incorporated by this language. Paragraph 17 is in addition to the incorporated paragraphs:

17. By reason of defendant's conduct, plaintiff was deprived of rights, privileges, and immunities secured to her by the Fourth and Fourteenth Amendment to the Constitution of the United States by, *inter alia,* (a) arresting plaintiff without reasonable suspicion or probable cause; (b) subjecting plaintiff to an illegal search and seizure; (c) depriving plaintiff of her constitutionally protected rights; (d) submitting false and inaccurate police reports leading to the malicious prosecution of plaintiff; and (e) engaging in conduct of abuse of power and authority which shocks the conscience.

We hold that this paragraph and the supporting allegations sufficiently allege a section 1983 cause of action premised on Haskin's allegedly sexually harassing conduct.

■■ Pleadings that set forth a claim for relief must contain "a short and plain statement of the claim showing that the

---

**2.** The district court held that the gravamen of the first cause of action was "arrest without reasonable suspicion or probable cause and subsequent malicious prosecution," in other words, false arrest. Because Fontana pled

*nolo contendre* to the charges stemming from her arrest the court further held that she could not sustain a claim for false arrest. Fontana does not challenge this reasoning on appeal.

pleader is entitled to relief." Fed.R.Civ.P. 8(a). Pleadings need suffice only to put the opposing party on notice of the claim. *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "All pleadings shall be construed as to do substantial justice," Fed.R.Civ.P. 8(f), and "[n]o technical forms of pleading ... are required." Fed.R.Civ.P. 8(e)(1). Specific legal theories need not be pleaded so long as sufficient factual averments show that the claimant may be entitled to some relief. *Am. Timber & Trading Co. v. First Nat'l Bank*, 690 F.2d 781, 786 (9th Cir.1982).

■ In light of these liberal pleading standards, the district court misconstrued Fontana's complaint. The first cause of action incorporates every allegation of Haskin's alleged sexual predation of Fontana. It alleges a deprivation of Fontana's civil rights and lists five Constitutional theories as the source of the rights that were deprived. Plaintiffs are not required to allege legal theories, *id.*, but doing so makes it more likely that the opposing party will have notice and better understanding of what is at issue. Two of the complaint's theories, (a) and (d), can be read to refer only to Fontana's cause of action for false arrest, which is not part of this appeal. However, the other three theories, (b), (c), and (e)(2), suffice to put Haskin on notice that they refer to what allegedly happened in the back seat of the highway patrol car and at the station. Most notable in this regard is "(e) [defendant] engag[ed] in conduct of abuse of power and authority which shocks the conscience." The phrase "abuse of power and authority which shocks the conscience," in context, refers to the allegations of sexual harassment and cannot be read so narrowly as to refer only to the allegations of police report falsification.

We reject Haskin's argument that Fontana's second and third causes of action—which explicitly allege Haskin's sexual misbehavior—limit her first cause of action. His premise is flawed because Fontana incorporated paragraph eight, in which she alleged that Haskin sexually harassed her, into all three of her causes of action. The fact that the first count contains no express, independent allegations of sexual harassment is irrelevant. The Federal Rules of Civil Procedure expressly allow adoption by reference, Fed.R.Civ.P. 10(c), and do not distinguish between incorporated and unincorporated allegations. Alternatively pled claims need not even be consistent with one another. Fed.R.Civ.P. 8(e). Moreover, given paragraph eight and the sweeping theories of paragraph seventeen, to hold that Fontana did not expressly address Haskin's sexual advances in her first cause of action would be inconsistent with the requirement that we construe pleadings "as to do substantial justice." Fed.R.Civ.P. 8(f).

■ We reject the district court's construction of Fontana's first cause of action; the complaint was sufficient, on its face, to allege a section 1983 cause of action for deprivation of civil rights stemming from Haskin's sexually harassing behavior toward Fontana while she was under restraint.[3]

---

3. In the alternative, even if the complaint were insufficient, the district court abused its discretion by denying Fontana's oral request to amend her complaint to better plead a sexual harassment based first cause of action. *See Simon v. Value Behavioral Health, Inc.*, 208 F.3d 1073, 1084 (9th Cir.2000) (The denial of a request to amend a complaint is reviewed for an abuse of discretion.). Five factors, first enunciated in *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), govern. All five factors cut in Fontana's favor: (1) There was no undue delay because Fontana had no idea that the complaint would be narrowly construed; (2) Fontana did not act in bad faith; (3) Fontana had never previously amended her complaint; and (4) Haskin will not be prejudiced by an amendment because he conducted discovery

*IV. Does Fontana's First Cause of Action Survive Summary Adjudication?*

Haskin argues further that, as a matter of law, his alleged sexual behavior did not violate any of Fontana's Constitutional rights. He therefore asks us to affirm the district court's grant of summary adjudication of Fontana's first cause of action, even as we have construed it in Part III. Even though Haskin raised and briefed this argument to the district court, the district court failed to reach the argument because of the error it made in construing the complaint. We hold that Haskin's motion for summary adjudication fails on the merits, and we reverse and remand so that the case may proceed to trial.

We must determine, viewing the evidence in the light most favorable to Fontana, whether there are any genuine issues of material fact and whether Haskin is entitled to judgment as a matter of law. *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir.2000) (en banc). Haskin argues that even accepting all of Fontana's claims as true, Fontana is not entitled, as a matter of law, to judgment.

Under 42 U.S.C. § 1983, a person may bring an action against a government employee who, acting under color of law, "subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws...." Haskin—having allegedly committed these acts while on duty, after having arrested Fontana and in the process of accompanying her to jail to be processed—acted under color of law. The question is whether Fontana was deprived of any right, privilege, or immunity secured by the Constitution. Fontana argues that two of her Constitutional rights were violated. She was denied the right to be free (1) from unreasonable searches and seizures under the Fourth Amendment and (2) from conduct by law enforcement officers that shocks the conscience or offends human dignity under the Fourteenth Amendment. We hold that Fontana's allegations, if proved, establish that Haskin violated Fontana's Fourth Amendment rights, and thus, that Haskin is not entitled to summary adjudication.

*A. Fourth Amendment*

*1. The Scope of the Fourth Amendment Right*

At the outset, we make two related points about the scope of the Fourth Amendment. (1) Fontana's claim is a Fourth Amendment claim for unreasonable seizure and intrusion on one's bodily integrity, and (2) the Fourth Amendment protects a criminal defendant after arrest on the trip to the police station. First, even though this case does not involve excessive force in the traditional sense, it still falls within the Fourth Amendment. The Fourth Amendment's requirement that a seizure be reasonable prohibits more than the unnecessary strike of a nightstick, sting of a bullet, and thud of a boot. *Headwaters Forest Def. v. County of Humboldt*, 240 F.3d 1185, 1199 (9th Cir.2001) ("Although the absence of deadly force or physical blows can mean that a[n] intrusion on an arrestee is 'less significant than most claims of force,' that fact alone is not dispositive in excessive force cases" (citation omitted)); *cf. Schmerber v. California*, 384 U.S. 757, 771–72, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (deciding whether the police conducted a blood test on a suspect in a reasonable manner). Beyond the specific proscription of excessive force, the Fourth

to gather evidence regarding the sexual allegations. As for the fifth factor, Fontana's claim is not futile for the reasons addressed in Part IV.

Amendment generally proscribes "unreasonable intrusions on one's bodily integrity," *Headwaters Forest*, 240 F.3d at 1199, and other harassing and abusive behavior that rises to the level of "unreasonable seizure." Fontana has alleged facts that would constitute an unreasonable seizure and an unlawful intrusion on her bodily integrity in this case.

■ Second, we have held that "once a seizure has occurred, it continues throughout the time the arrestee is in the custody of the arresting officers.... Therefore, excessive use of force by a law enforcement officer in the course of transporting an arrestee gives rise to a section 1983 claim based upon a violation of the Fourth Amendment." *Robins v. Harum*, 773 F.2d 1004, 1010 (9th Cir.1985). In *Robins*, two criminal defendants were arrested and placed in the rear of a patrol car by a pair of police officers. En route to the jail, one defendant began to argue with one of the officers about whether the defendant should be allowed to smoke in the car. The officers abruptly stopped the car,

sprang from the vehicle and started trying to pull the pair from the back seat. A struggle ensued. Spectators gathered and the defendants yelled for the crowd to "get some good cops." We held that the incident constituted a violation of the Fourth Amendment that could support a section 1983 suit. *Id.* at 1010. The initial arrests "plainly constituted seizures for Fourth Amendment purposes." *Id.* "These seizures continued while the Robinses were en route to the sheriff's department in the custody of the arresting officers." *Id.*[4] These were acts of continuing dominion upon already seized suspects, and this was enough to implicate the Fourth Amendment. *Id.*

■ Therefore, the Fourth Amendment prohibition against unreasonable search and seizure continues to apply after an arrestee is in the custody of the arresting officers.[5] *Accord Albright v. Oliver*, 510 U.S. 266, 277, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (Ginsburg, J., concurring) (seizure continues throughout criminal trial). The trip to the police station is

---

4. *Robins* is not inconsistent with *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), a case in which the Supreme Court discussed excessive force claims in the § 1983 context. *See Pierce v. Multnomah County*, 76 F.3d 1032, 1042 (9th Cir. 1996) (citing *Robins* and *Graham*, and applying the Fourth Amendment to the period of time after the suspect is detained but before he is arrested). In *Graham*, the Supreme Court held that the Fourth Amendment governs events "in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen." 490 U.S. at 395, 109 S.Ct. 1865. On the other hand, the "Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Id.* at 395 n. 10, 109 S.Ct. 1865. But the Court expressly left unanswered "the question whether the Fourth Amendment continues to provide individuals with protection against the deliberate use of excessive physical force beyond the point at which arrest ends and pretrial detention begins." *Id. Robins* and

*Pierce* provide our answer to the unanswered question.

5. We note that the circuits are split on this issue. *Compare Wilson v. Spain*, 209 F.3d 713, 715–16 (8th Cir.2000) (adopting continuing seizure approach); *United States v. Johnstone*, 107 F.3d 200, 206–07 (3d Cir.1997) (same), *and Frohmader v. Wayne*, 958 F.2d 1024, 1026 (10th Cir.1992) (same), *and Powell v. Gardner*, 891 F.2d 1039, 1044 (2d Cir.1989) (same), *and McDowell v. Rogers*, 863 F.2d 1302, 1306 (6th Cir.1988), *with Riley v. Dorton*, 115 F.3d 1159, 1164 (4th Cir.1997) (declining to adopt a "continuing seizure" conception of the Fourth Amendment, and listing cases from circuits rejecting and adopting the rule), *and Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir.1996) (analyzing claims of pretrial detainees under Fourteenth Amendment's due process clause), *and Brothers v. Klevenhagen*, 28 F.3d 452, 456 (5th Cir.1994) (same), *and Wilkins v. May*, 872 F.2d 190 (7th Cir.1989) (same).

a "continuing seizure" during which the police are obliged to treat their suspects in a reasonable manner. *See Robins*, 773 F.2d at 1010; *cf. Pierce v. Multnomah County*, 76 F.3d 1032, 1042–43 (9th Cir. 1996). Haskin's alleged abuse of power constituted an unreasonable seizure, an unreasonable intrusion into Fontana's bodily integrity, and an exercise of continuing dominion over a criminal suspect in custody; these facts raise the same constitutional concerns raised in *Robins*. Fontana's claim squarely raises a Fourth Amendment claim.

### 2. Fourth Amendment Reasonableness

■■■■ In *Tennessee v. Garner* the Supreme Court held that Fourth Amendment reasonableness "depends not only on when a seizure is made, but also how it is carried out." 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). Assessing the Constitutionality of police action during a seizure involves "a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (quoting *Garner*, 471 U.S. at 8, 105 S.Ct. 1694). In traditional excessive force cases, we consider the severity of the crime at issue, the threat that the suspect poses to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting flight. *Id.* Although the excessive force test is a useful analog, it is not directly applicable to assess the type of behavior alleged in this case, because there can be no "countervailing governmental interest" to justify sexual misconduct. "[W]here there is no need for force, *any* force used is constitutionally unreasonable." *Headwaters Forest*, 240 F.3d at 1199 (emphasis in original). Of course, not every truthful allegation of sexual bodily intrusion during an arrest is actionable as a violation of the Fourth Amendment. Some bodily intrusions may be provably accidental or *de minimis* and thus constitutionally reasonable. However, we need not define the precise contours of the bodily intrusion test under the Fourth Amendment, because if the facts are as Fontana has alleged, this case involved an unreasonable seizure.

■■■■ Gratuitous and completely unnecessary acts of violence by the police during a seizure violate the Fourth Amendment. *See, e.g., McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir.1988) ("[O]ur court has repeatedly found that a totally gratuitous blow with a policeman's nightstick may cross the constitutional line, and ... we do not believe that a serious or permanent injury is a prerequisite to a claim under Section 1983." (internal quotation marks and citations omitted)); *McDonald v. Haskins*, 966 F.2d 292, 295 (7th Cir.1992); *cf. P.B. v. Koch*, 96 F.3d 1298, 1303 n. 4 (9th Cir.1996) (finding that if the Fourth Amendment did govern, a high school principal's arbitrary assaults on his students were objectively unreasonable "since there was no need for force").

■■■ Assuming the facts of Fontana's complaint to be true, Haskin engaged in unreasonable, non-consensual, inappropriate touching and propositioning. Fontana alleges that she was helpless, handcuffed, and frightened and, thus, in a vulnerable position when Officer Haskin began to prey upon her. She had just been in a disorienting, high speed car accident at two o'clock in the morning. The highway patrol officers responding to the scene conducted field sobriety tests, arrested and handcuffed her, and took her from her car presumably to drive her to jail. She plausibly claims to have been so frightened by Haskin's acts that she feared she was being taken to an unknown destination, rather than the police station. Haskin's alleged acts—both the physical touching as

well as the comments he is alleged to have made—if they occurred as described, were an abuse of power and, under the circumstances, unreasonable intrusions into Fontana's bodily integrity in violation of the Fourth Amendment.

There is no situation that would justify any amount of purposeful sexual verbal and physical predation against a handcuffed arrestee. No risk of flight nor threat to officer safety exists to justify such an abuse of the one-sided power arrangement that arises from a custodial arrest such as this one. If the jury believes Fontana, she will have proved that Haskin deprived her of her Fourth Amendment right to be free from unreasonable seizure.

### B. Substantive Due Process: Conduct that Shocks the Conscience

In *Rochin v. California*, the Supreme Court held that some conduct by govern-

mental officials "offends those canons of decency and fairness which express the notions of justice of English-speaking peoples." 342 U.S. 165, 169, 72 S.Ct. 205, 96 L.Ed. 183 (1952). Since then, behavior by officials that "shocks the conscience" has been held to deprive liberty in violation of the due process clause of the Fourteenth Amendment.

 However, Fontana's claim, although a possible fit under the Fourteenth Amendment, is better seen as a Fourth Amendment claim because she had been seized by the police.[6] *See Reed v. Hoy*, 909 F.2d 324, 329 (9th Cir.1990) ("[C]laims arising before or during arrest are to be analyzed exclusively under the fourth amendment's reasonableness standard rather than the substantive due process standard...."). The "Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth

---

**6.** If this case had not involved an arrest, it appropriately would have been analyzed under Fourteenth Amendment substantive due process analysis. Most cases that involve unwanted sexual contact or harassment by public officials have been analyzed under the substantive due process right to be free from violations of bodily integrity under the Fourteenth Amendment. Cases involving rape and sexual harassment by police officers are usually analyzed in this manner. *See, e.g., Rogers v. City of Little Rock*, 152 F.3d 790, 796 (8th Cir.1998) (applying substantive due process analysis to a claim that a police officer pulled over a woman, followed her home so she could get her automobile insurance policy, and raped her); *Jones v. Wellham*, 104 F.3d 620, 628 (4th Cir.1997) (Fourteenth Amendment not Fourth Amendment applies to claim that police officer pulled woman over, offered to drive her home instead of arresting her, and forced her to have sex with him); *Haberthur v. City of Raymore*, 119 F.3d 720, 723 (8th Cir.1997) (the case of a police officer who declined to give woman a speeding ticket, but hounded her for weeks, fondled her chest and invited her to have sex with him was analyzed under the Fourteenth Amendment). However-

er, none of these cases involved an arrest or other custodial situation. *See, e.g., Jones*, 104 F.3d at 628 ("Because the harm inflicted did not occur in the course of an attempted arrest or apprehension of one suspected of criminal conduct," the Fourth Amendment does not apply.). In fact, the dissent in *Rogers* argued that the Fourth Amendment should apply because "there was an initial traffic stop and seizure followed by continuing, allegedly coercive investigation at [the victim's] home." *Rogers*, 152 F.3d at 801. The majority refused to follow this reasoning, in part, because "[t]he assault occurred after [the plaintiff] had been told she could go and [the police officer] had followed her home, far from the scene of the traffic stop and separated in time from it." *Id.* at 796. In other words, unlike in this case, the assault did not occur until the continuing seizure had ended.

Likewise, cases involving a student's right to be free from sexual abuse by school employees are also analyzed under the Fourteenth Amendment right to freedom from violations of bodily integrity. *See, e.g., Plumeau v. School District # 40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir.1997); *Wudtke v. Davel*, 128 F.3d 1057, 1063–64 (7th Cir.1997).

Amendment's ban on cruel and unusual punishments ... are the two primary sources of constitutional protection against physically abusive governmental conduct." *Graham*, 490 U.S. at 394, 109 S.Ct. 1865. "If a constitutional claim is covered by a specific constitutional provision ... the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *County of Sacramento v. Lewis*, 523 U.S. 833, 843, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (quoting *United States v. Lanier*, 520 U.S. 259, 272 n. 7, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997)); *accord Saucier v. Katz*, 531 U.S. 991, 121 S.Ct. 2151, 150 L.Ed.2d 272 (June 18, 2001); *Albright v. Oliver*, 510 U.S. 266, 272, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). Sexual misconduct by a police officer toward another generally is analyzed under the Fourteenth Amendment; sexual harassment by a police officer of a criminal suspect during a continuing seizure is analyzed under the Fourth Amendment.[7]

### CONCLUSION

Fontana's complaint sufficiently alleged a section 1983 cause of action arising out of Haskin's alleged sexually harassing behavior, and the district court

erred in holding otherwise.[8] Furthermore, construing the evidence in the light most favorable to Fontana, Haskin is not entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). Accordingly, we reverse the district court's grant of summary adjudication for Haskin, vacate the district court's dismissal of Fontana's pendant state law claims, and remand the case to proceed to trial.

REVERSED, VACATED AND REMANDED.

---

7. Even were we to apply the Fourteenth Amendment analysis, we would reverse the summary judgment. Under the Fourteenth Amendment's substantive due process prong, we use the "shocks the conscience" test. *County of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). The threshold question is "whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* at 848 n. 8, 118 S.Ct. 1708.

Considering the evidence in the light most favorable to Fontana, Haskin is not entitled to judgment as a matter of law under the Fourteenth Amendment. For the same reasons elucidated in the prior discussion of the Fourth Amendment, *infra* Part IV(A)(2), Haskin's sexual predation was "unjustifiable by

any government interest." *Id.* at 849, 118 S.Ct. 1708. It was an "arbitrary exercise of the powers of government, unrestrained by the established principles of private right and distributive justice." *Id.* at 845 (quoting *Hurtado v. California*, 110 U.S. 516, 527, 4 S.Ct. 111, 28 L.Ed. 232 (1884)). Haskin's behavior, if proved, was egregious and outrageous and shocks the conscience as a matter of law.

8. Although Haskin asserted qualified immunity and the issue was briefed to the district court, neither of the parties briefed it to us. In light of the district court's ruling, it had no need to rule on the issue. We do not address it here other than to note that the alleged conduct, if proved, is *malum in se*. No reasonable officer could believe this conduct did not violate Fontana's constitutional rights.