**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARIA TORRES; MELCHOR TORRES;
EVERARDO TORRES,
    *Plaintiffs-Appellants,*

   v.

CITY OF MADERA; MARCY NORIEGA,
    *Defendants-Appellees.*

No. 05-16762*

D.C. No.
CV-02-06385-AWI/
LJO

OPINION

Appeal from the United States District Court
for the Eastern District of California
Anthony W. Ishii, District Judge, Presiding

Argued and Submission Deferred May 17, 2007
San Francisco, California
Submitted November 8, 2007

Filed May 5, 2008

Before: Betty B. Fletcher, Eugene E. Siler, Jr.,** and
Michael Daly Hawkins, Circuit Judges.

Opinion by Judge Hawkins

*Companion case No. 05-16468, argued and submission deferred on May 17, 2007, has been decided separately in a Memorandum disposition.

**The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

## COUNSEL

Carl E. Douglas (argued) and Cameron A. Stewart (briefed), The Cochran Firm, Los Angeles, California, for the plaintiffs-appellants.

Bruce Praet (briefed and argued), Ferguson, Praet & Sherman, Santa Ana, California, for the defendants-appellees.

## OPINION

HAWKINS, Circuit Judge:

In this interlocutory appeal, we face an issue remarkably similar on its facts to that faced by the Fourth Circuit in *Henry v. Purnell*, 501 F.3d 374 (4th Cir. 2007). There, a deputy sheriff, intending to deploy a Taser device holstered near his firearm, instead drew and fired his service weapon, wounding a suspect fleeing arrest. Here, Madera City Police Officer Marcy Noriega ("Officer Noreiga") made the same mistake with even more tragic consequences: she shot and killed Everardo Torres ("Everardo"), an arrestee sitting handcuffed in the back of a patrol car. We conclude that Everardo was seized within the meaning of the Fourth Amendment, and further conclude, as did our sister circuit, that the officer's mistake is governed by Fourth Amendment reasonableness analysis.

## Facts and Procedural History

In the process of responding to a loud music complaint, Madera City Police officers arrested two individuals—Erica Mejia and Everardo Torres—handcuffed them, and placed them in the back of a patrol car. After the two were in the patrol car for approximately thirty to forty-five minutes (during which time Everardo had fallen asleep), Mejia was removed from the car and her handcuffs were readjusted. At this time, Everardo awoke and started yelling and began kicking the back window of the patrol car. In response, Officer Noriega approached Everardo's side of the patrol car. At least one witness saw Officer Noriega say something as she approached, which Officer Noriega described as "yelling at [Everardo] to stop or he was going to be tased." Officer Noriega then opened the patrol car door and reached down with her right hand to her right side, where she had a Glock semiautomatic pistol in a holster in her officer belt and, immediately below, a Taser M26 stun gun in a thigh holster.

She unholstered a weapon, pointed the weapon's laser[1] at Everardo's center mass, and pulled the trigger of her similarly-sized-and-weighted Glock, mortally wounding Everardo.

Plaintiffs-Appellants Maria Torres and Melchor Torres, individually and as Administrators of the Estate of their son, Everardo, and Melchor Torres, Jr., Everardo's brother ("The Torres family") thereafter sought damages from Officer Noriega and the City of Madera Police Department ("Madera") under 42 U.S.C. § 1983 for violation of Everardo's Fourth Amendment right to be free from unreasonable seizures.[2] Officer Noriega and Madera moved for summary judgment on this claim, and the district court granted this motion, concluding that "[a] Fourth Amendment seizure . . . occur[s] . . . only when there is a governmental termination of freedom of movement *through means intentionally* applied," and that "the means or instrumentality at issue is the intent to seize Everardo with the [Taser] versus the Glock and not the general intent to seize Everardo by shooting 'something.' " Plaintiffs requested, and the district court granted, certification under Rule 54(b) to allow for this interlocutory appeal.

## Standard of Review

A district court's grant of summary judgment is reviewed de novo, *CreAgri, Inc. v. USANA Health Scis., Inc.*, 474 F.3d 626, 629 (9th Cir. 2007), and we are to affirm if, viewing the

---

[1]Officer Noriega's Glock and Taser were both equipped with laser-sighting devices.

[2]Plaintiffs also brought a Fourteenth Amendment Due Process § 1983 claim, as well as wrongful death, assault and battery, false arrest and imprisonment, negligence, and negligent infliction of emotional distress claims under California state law. These claims, however, are not at issue in this appeal, as Plaintiffs are no longer pursuing their Fourteenth Amendment § 1983 claim, and the district court's grant of summary judgment against Plaintiffs did not extend to any of the state law claims.

evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact, *Contract Mgmt., Inc. v. Rumsfeld*, 434 F.3d 1145, 1146 (9th Cir. 2006) (per curiam).

## Discussion

**[1]** Officer Noriega's conduct violated Everardo's constitutional rights if Everardo was seized and Officer Noriega's conduct in the course of the seizure was unreasonable. *See Florida v. Jimeno*, 500 U.S. 248, 250 (1991); *Brower v. County of Inyo*, 489 U.S. 593, 596, 599 (1989).

**[2]** A seizure is a "governmental termination of freedom of movement through means intentionally applied," *Jensen v. City of Oxnard*, 145 F.3d 1078, 1083 (9th Cir. 1998) (internal quotation marks and citation omitted), and occurs "whenever [an officer] restrains the individual's freedom to walk away." *Robins v. Harum*, 773 F.2d 1004, 1009 (9th Cir. 1985). Madera argues that Everardo was not "seized" by the firing of the Glock because the Glock was not a "means intentionally applied," *Brower*, 489 U.S. at 597.

**[3]** However, the Ninth Circuit employs a "continuing seizure" rule, which provides that "once a seizure has occurred, it continues throughout the time the arrestee is in the custody of the arresting officers." *Robins*, 773 F.2d at 1010. *See also Fontana v. Haskin*, 262 F.3d 871, 879-880 (9th Cir. 2001) ("[T]he Fourth Amendment prohibition against unreasonable search and seizure continues to apply after an arrestee is in the custody of the arresting officers."). Because Everardo was handcuffed and placed in the back of the patrol car, where he remained when Officer Noriega fired, Everardo remained "in the custody of the arresting officers," and the officers' conduct continued to be governed by the Fourth Amendment.[3]

---

[3]The circuits are split on this issue. *Compare Wilson v. Spain*, 209 F.3d 713, 715-16 (8th Cir. 2000) (adopting continuing seizure approach);

**[4]** Even though Everardo was "seized" within the meaning of the Fourth Amendment, Officer Noriega can only be liable under Section 1983 if her conduct was unreasonable. *See Brower*, 489 U.S. at 599; *Fontana*, 262 F.3d at 879; *Robins*, 773 F.2d at 1010. The reasonableness of a particular use of force is judged "from the perspective of a reasonable officer on the scene," and "in light of the facts and circumstances confronting them." *Graham v. Connor,* 490 U.S. 386, 396-97 (1989).

**[5]** There is no question that Officer Noriega intended to draw her Taser but mistakenly drew her Glock. Faced with almost precisely the same situation—an officer's mistake in drawing his Glock when he intended to draw his Taser—the Fourth Circuit concluded that the relevant inquiry was whether the officer's mistake in using the Glock rather than the Taser was objectively unreasonable. *Henry*, 501 F.3d at 384.[4]

---

*United States v. Johnstone*, 107 F.3d 200, 206-07 (3d Cir. 1997) (same); *Frohmader v. Wayne*, 958 F.2d 1024, 1026 (10th Cir. 1992) (same); *Powell v. Gardner*, 891 F.2d 1039, 1044 (2d Cir. 1989) (same); *McDowell v. Rogers*, 863 F.2d 1302, 1306 (6th Cir. 1988), *with Riley v. Dorton*, 115 F.3d 1159, 1164 (4th Cir. 1997) (rejecting "continuing seizure" approach), and *Wiley v. City of Chicago*, 361 F.3d 994, 998 (7th Cir. 2004) (same).

[4]The Fourth Circuit does not follow the "continuing seizure" rule. *Riley*, 115 F.3d at 1164. Moreover, in *Henry*, the suspect took flight before the officer could make an arrest, and so the officer's mistaken use of his Glock acted as the initial "seizure" of the suspect. *See Henry v. Purnell*, 428 F. Supp. 2d 393, 394-95 (D. Md. 2006) (describing facts of suspect's attempted arrest). The *Henry* court was thus forced to decide whether the officer's mistaken use of his Glock instead of his Taser constituted a Fourth Amendment seizure. 501 F.3d at 381-82.

Here, prior to the accident, Everardo had already been arrested, handcuffed, and placed in the back of a locked police vehicle. He was therefore already "seized" at the time that Officer Noriega mistakenly fired her Glock. *Fontana*, 262 F.3d at 879-80. This factual distinction, along with the Ninth Circuit's adherence to the "continuing seizure" rule, renders it unnecessary for us to decide the analytically distinct question of whether the accidental shooting in this case is an independent "seizure" for Fourth Amendment purposes. We express no opinion on the Fourth Circuit's analysis of that issue.

We agree that this is the appropriate inquiry. The Supreme Court has applied a reasonableness analysis to honest mistakes of fact in a variety of situations. *See*, *e.g.*, *Maryland v. Garrison*, 480 U.S. 79, 87 (1987) (mistaken but reasonable search of the wrong premises); *Hill v. California*, 401 U.S. 797, 803-04 (1971) (mistaken but reasonable arrest of the wrong person). Although Everardo was already "seized" at the time of the shooting, it is Officer Noriega's mistaken use of her Glock—not the preceding acts of placing Everardo under arrest and handcuffing him—that the district court must examine for reasonableness. This is in keeping with our "continuing seizure" cases, where our focus is on the aspect of the seizure the plaintiff alleges is "unreasonable." *See Robins*, 773 F.2d at 1010 (analyzing officer's post-arrest excessive use of force en route to police station as aspect of seizure alleged to be unreasonable); *Fontana*, 262 F.3d at 880-81 (analyzing officer's post-arrest inappropriate physical touching and sexual propositioning as aspect of seizure alleged to be unreasonable).

*Henry* concluded, and we agree, that five factors were relevant to the reasonableness determination: (1) the nature of the training the officer had received to prevent incidents like this from happening; (2) whether the officer acted in accordance with that training; (3) whether following that training would have alerted the officer that he was holding a handgun; (4) whether the defendant's conduct heightened the officer's sense of danger; and (5) whether the defendant's conduct caused the officer to act with undue haste and inconsistently with that training. *Henry*, 501 F.3d at 383.

**[6]** While these factors are relevant to the determination of whether Officer Noriega acted reasonably, we also stress that "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments." *Graham*, 490 U.S. at 396-97. Since the parties did not brief the issue of whether Officer Noriega's mistake was a reasonable one, the factual record is insuffi-

ciently developed for this court to make this determination, and we remand to the district court to determine in the first instance whether Noriega's conduct was unreasonable under *Graham,* 490 U.S. at 396-97, and to otherwise proceed with the matter.[5]

**REVERSED** and **REMANDED.**

---

[5]Because we cannot resolve the reasonableness inquiry here, we cannot resolve whether Officer Noriega's conduct violated the Fourth Amendment—a question whose resolution is condition precedent to the qualified immunity determination. *See Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). Of course, should the district court conclude that Officer Noriega acted unreasonably, Officer Noriega may nevertheless be entitled to qualified immunity if the objective unreasonableness of her conduct in the course of Everardo's seizure was not clearly established.