**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3027
_____

BRANDY KANE,

Appellant

v.

SHAWN BARGER, in his Individual Capacity as a Police
Officer for the Borough of Coraopolis
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(No. 2-15-cv-00846)
District Judge: Honorable Mark R. Hornak
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 12, 2018

Before: CHAGARES, GREENBERG, and FUENTES,
*Circuit Judges*

(Opinion filed: August 22, 2018)
_____

Noah Geary, Esq.
Washington Trust Building, Suite 225
Washington, PA 15301

      *Attorney for Appellant*

Mark R. Lane, Esq.
Dell, Moser, Lane & Loughney, LLC
Two Chatham Center, Suite 1500
112 Washington Place
Pittsburgh, PA 15219

      *Attorney for Appellee*

_____

OPINION OF THE COURT
_____

FUENTES, *Circuit Judge*.

On June 27, 2013, Brandy Kane went to the hospital and reported that she may have been the victim of a sexual assault. That night, Officer Shawn Barger of the Coraopolis Police Department went to the hospital to interview Kane regarding the possible assault. At that time, Kane says Barger told her to bring the clothes she wore during the alleged incident to him at the police station.

The next day, Kane—accompanied by a friend— brought her clothes to the police station. While there, contrary to department policy, Barger met alone with Kane in a back room of the station. Then, also in violation of

department policy, Barger used his personal cell phone to photograph intimate areas of Kane's body.

During this encounter, Barger touched Kane twice. First, rather than relying on Kane to do so, Barger pulled Kane's shorts down to photograph a bruise on her right buttock. At this point, Kane says she "felt something touch her butt crack which caused her to jump."[1] Second, again without asking Kane to do so, Barger pulled Kane's tank top down to expose a bruise on her upper chest.

Kane says that, while photographing her, Barger repeatedly asked about her breasts, vagina, and buttocks. In this regard, Barger persistently inquired if Kane sustained injuries to her vagina. Despite Kane's consistent denials, Barger's relentless questioning led Kane to expose her vagina to him.

After photographing Kane, Officer Barger failed to document the clothing evidence that Kane provided. Moreover, when Kane later reported Barger's actions, he gave inconsistent accounts of his behavior. Indeed, while Barger initially denied photographing Kane at all—let alone with his cell phone—he later admitted he lied because he did not want his girlfriend to be jealous that he photographed Kane.

Against this background, Kane alleges that Barger violated her Fourteenth Amendment right to bodily integrity by—in the course of purportedly interviewing her about her alleged sexual assault—touching her and using his personal

---

[1] App. 173.

3

cell phone to photograph her intimate areas in violation of department policy. The District Court granted summary judgment in favor of Barger, finding that—even if Barger's conduct was unlawful—he was still immune from suit under the exacting "clearly established" prong of our qualified immunity analysis.

Viewing the record in the light most favorable to Kane, which supports an inference that Barger acted for personal gratification rather than investigative ends, we hold that Barger's conduct shocks the conscience and violated Kane's right to bodily integrity. We further hold that the right at issue was clearly established at the time of Barger's conduct. Accordingly, we will reverse and remand for further proceedings.

## I.

### A.[2]

In the early morning of June 27, 2013, Kane—then 20 years old—was arrested and charged with disorderly conduct, underage drinking, resisting arrest, and escape. After being released from jail that day, Kane—who had "blacked out" from alcohol consumption—grew concerned that she may have been sexually assaulted because she was not wearing pants when she was arrested, she had a large amount of vaginal discharge, and she could not recall what happened. Because of these concerns, Kane went to the hospital that

---

[2] Because we are reviewing a claim of qualified immunity, we recount the facts in the light most favorable to Kane. *Karns v. Shanahan*, 879 F.3d 504, 520 (3d Cir. 2018).

4

night for both a psychiatric evaluation and a rape kit examination. As part of the rape kit examination, a doctor photographed injuries to Kane's arms, shoulders, knees, and legs.

That evening, Officer Barger—then 40 years old—went to the hospital to collect the rape kit. Barger also interviewed Kane in the presence her mother and a victim advocate. The parties dispute what occurred next. While Kane maintains that Barger told her to bring the clothes she wore during the purported assault to him at the police station the following day, Barger contends that Kane came to the station to get her cell phone. In any event, the next day, Kane—and her friend, Cayla Combs—went to the Coraopolis Police Station with the clothes she wore during the alleged incident.

At the station, Kane and Combs both met separately with Barger. Contrary to department policy, Kane and Barger met alone in a back room of the station. Kane asserts that Barger closed the hallway door. However, while Barger admits that he directed Kane to the back room, he says that the door to the hallway was open. During this meeting, in further violation of department policy, Barger used his personal cell phone to photograph Kane's intimate areas, including her breasts and buttocks.

At the outset, Barger asked Kane if she had bruising on or around her intimate areas. Kane told Barger that the hospital photographed all of her injuries except for a bruise on her right buttock. Barger then asked Kane if he could photograph the bruise on her right buttock. In so doing,

5

Barger said he had a special application on his personal cell phone for taking photographs.[3]  Kane agreed.

Before Barger photographed Kane's right buttock, Kane pulled down her gym shorts to expose that area. Thereafter, without asking Kane to do so, Barger pulled Kane's shorts down further to more fully expose the bruise on her right buttock so he could photograph it.[4]  At this point, Kane "felt something touch her butt crack which caused her to jump."[5]  Barger denies touching Kane's buttocks and maintains that he only moved the tag on the back of Kane's shorts.

Kane says that Barger repeatedly asked about her breasts, vagina, and buttocks while holding his personal cell phone and photographing her.  Because Barger kept asking about her buttocks, Kane asked if he wanted to photograph her other injuries.  Barger answered in the affirmative. Altogether, Kane believes Barger photographed her between

---

[3]  Barger says, and his official report reflects, that the department's digital camera was inoperative.  However, his report also failed to mention that he photographed Kane using his personal cell phone.

[4]  In his deposition, Barger described his attempt as "unsuccessful" because the application would "freeze" when he "would take a photograph."  App. 212.  Nevertheless, in a request for admission, Barger agreed that he "took photographs of Brandy Kane in the Coraopolis Borough Police Station."  App. 252.  In any event, Barger concedes that he intended to photograph Kane.

[5]  App. 173.

four and eight times. Nevertheless, Kane does not know for sure because she did not see any photographs or hear a camera "click." Barger admits that he attempted to photograph Kane between five and seven times.

During that first round of photographing, Barger twice asked Kane if she had injuries to her vagina. She responded in the negative both times. Barger later told Kane that the photographs did not save and asked her if he could retake them. Kane agreed. Kane contends that, during this second round of photographing, Barger again asked her if she had injuries to her vagina. Kane again responded in the negative. However, despite her repeated denials, at some point Kane exposed her vagina to Barger. Kane also asserts that Barger looked at her vagina. While Kane is unsure whether Barger photographed her vagina, she asserts he made her "feel like he did" because "he kept asking about it."[6]

At one point, after Barger asked about a bruise on Kane's chest, he—again without having Kane do so—pulled her tank top down to expose her upper chest area. After Barger did so, Kane held her tank top where Barger positioned it so he could photograph the bruise on her upper chest area. While Kane's breasts were not fully exposed, her upper chest was. Kane contends that Barger also had her sit on a table so he could photograph her inner thighs. Barger denies this and says that Kane merely stood on the opposite side of the desk. Kane further maintains that Barger instructed her to pull her shorts up to her bikini line so he could photograph her inner thighs.

_____

[6] App. 174.

7

After photographing Kane, Barger said he would continue his investigation. Kane then left the police station. Barger later interviewed a number of possible witnesses to Kane's sexual assault. However, Barger failed to document the clothing evidence that Kane brought to him at the station. While Barger asserts that Kane's clothing was given to an "evidence officer to take custody of," he claims he does not know what happened to those items.[7]

Kane's mother later reported Barger's conduct to the Allegheny County Police Department. Then, on July 9, Kane met with Allegheny County Detective Michael Kuma to discuss the photographs that Barger had taken. After meeting with Kane, Kuma began investigating Barger. During Kuma's first interview with Barger, Barger denied photographing Kane at all in the back room of the station, let alone with his personal cell phone. Nevertheless, during a follow-up interview with Kuma, Barger admitted that he photographed Kane using his personal cell phone.

According to Kuma's official report, Barger explained that he lied about photographing Kane because he was worried that his girlfriend might become jealous upon learning he had done so. Kuma further reported that Barger said he took six or seven photographs of Kane's upper chest, buttocks, inner thighs, and the front and back of her legs. Kuma also said that Barger told him he deleted the photos. Barger concedes that he lied in his initial meeting with Kuma. However, Barger maintains that—while he attempted to

---

[7] App. 210.

photograph Kane—he did not delete photographs of Kane because his phone never saved them in the first place.[8]

Ultimately, Barger consented to disciplinary action for "serious violations of departmental policy," including using his cell phone—instead of department equipment—to photograph Kane, interviewing and photographing a female without a fellow officer or witness present, and failing to initially provide a full disclosure of the underlying incident.[9] Barger was also removed from the investigation into Kane's alleged sexual assault and suspended for two weeks without pay.

## B.

Subsequently, Kane filed this civil rights action under 42 U.S.C. § 1983 alleging that Barger violated her Fourteenth Amendment right to bodily integrity during his investigation into whether she was the victim of a sexual assault. Barger

---

[8] Kuma later used an extraction device to review approximately thirteen thousand photographs on Barger's personal cell phone. During his review, Kuma could not conclusively identify any photographs of Kane. However, Kuma did find a photograph of an unidentifiable woman— who could have been Kane—whose pants were pulled down to expose her buttocks. While Kuma maintains that the device should have recovered any photographs of Kane that Barger deleted, he explained that "[i]n [his] experience using the [extraction] device, there is no hard and fast rule that it downloads everything." SA 464.

[9] App. 245.

moved for summary judgment on two grounds. First, he argued that his conduct—even when viewed in the light most favorable to Kane—did not violate Kane's right to bodily integrity. Second, he asserted that—even if he violated Kane's right to bodily integrity—he was entitled to qualified immunity.

The District Court granted summary judgment for Barger on qualified immunity grounds. Two aspects of the decision below warrant mention here.

On one hand, the District Court stated that, "although it did not involve direct sexual contact, Officer Barger's conduct in the course of his duties, considered as a whole," could be "sufficiently appalling in terms of violating Kane's bodily integrity to be considered conscious-shocking [sic] for purposes of the constitutional tort that Kane advances in this case."[10] On this point, the District Court observed that "[t]here is little question that the record here would amply support a finding that the conduct to which Officer Barger has admitted was improper and highly inappropriate."[11]

However, the District Court did not ultimately decide whether Barger violated Kane's right to bodily integrity. Rather, the District Court found that, even if Barger violated Kane's rights, her claim would still fail under "the exacting standard of the 'clearly established' prong of the qualified immunity analysis."[12] In so holding, the District Court noted

---

[10] App. 29.

[11] App. 22.

[12] App. 29.

that—in light of the law at the time of Barger's conduct—it could not conclude that "every reasonable police officer in Officer Barger's position would have known that his particular conduct in photographing or attempting to photograph Kane in what is alleged to be a sexually-gratifying manner and in violation of [] professional and Departmental standards during an investigation into her possible sexual assault deprived Kane" of her right to bodily integrity.[13]  This appeal followed.[14]

## II.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."[15]  We conduct a two-step inquiry to determine whether a government official is entitled to qualified immunity.  "First, we ask whether the facts—taken in the light most favorable to the nonmoving party—show that a government official violated a constitutional right."[16] "Second, we ask whether that right was clearly established at the time of the official's actions."[17]

---

[13] App. 31.

[14] The District Court had jurisdiction under 28 U.S.C. § 1331.  We have jurisdiction under 28 U.S.C. § 1291.  We exercise plenary review over the District Court's grant of summary judgment.  *Curley v. Klem*, 298 F.3d 271, 276 (3d Cir. 2002).

[15] *Reichle v. Howards*, 566 U.S. 658, 664 (2012).

[16] *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015).

[17] *Id.*

**A.**

Kane argues that Barger violated her substantive due process right to bodily integrity by touching her and using his personal cell phone to photograph her intimate areas in violation of department policy while supposedly interviewing her about her alleged sexual assault. To demonstrate that her substantive due process rights were violated, Kane must establish that "the particular interest at issue is protected by the substantive due process clause," and that "the government's deprivation of that protected interest shocks the conscience."[18] We address each element in turn.

With regard to the first element, we have recognized that "[i]ndividuals have a constitutional liberty interest in personal bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment."[19] The Supreme Court has also specifically observed that "the 'liberty' specially protected by the Due Process Clause includes the right[] . . . to bodily integrity."[20] With this context, as the District Court rightly observed, "Kane had a right to not have her bodily integrity violated by a police officer investigating her potential sexual assault."[21]

---

[18] *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008).

[19] *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008); *see also Black by Black v. Ind. Area Sch. Dist.*, 985 F.2d 707, 709 n.1 (3d Cir. 1993) (noting that the Fourteenth Amendment protects a liberty interest in bodily integrity).

[20] *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (citation omitted).

[21] App. 31.

Accordingly, we must proceed to the second element of our substantive due process inquiry: specifically, whether Barger's conduct shocks the conscience. While "only the most egregious official conduct" can shock the conscience,[22] "[t]he level of culpability required for behavior to shock the conscience largely depends on the context in which the action takes place."[23] In this regard, we have observed that "[i]n a hyperpressurized environment, such as a high-speed police chase, intent to harm is required."[24] However, "where deliberation is possible and officials have the time to make unhurried judgments, deliberate indifference is sufficient."[25] Here, there is no indication that Barger faced circumstances calling for quick decision-making while photographing Kane. To the contrary, Barger had time for "actual deliberation."[26] Accordingly, the standard here is deliberate indifference, which requires "a conscious disregard of a substantial risk of serious harm."[27]

---

[22] *Chainey*, 523 F.3d at 219 (citation and quotation marks omitted).

[23] *L.R. v. Sch. Dist. of Philadelphia*, 836 F.3d 235, 246 (3d Cir. 2016); *see also Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (noting that the "measure of what is conscience shocking is no calibrated yard stick").

[24] *L.R.*, 836 F.3d at 246 (citation and quotation marks omitted).

[25] *Id.* (citation and quotation marks omitted).

[26] *Lewis*, 523 U.S. at 851.

[27] *L.R.*, 836 F.3d at 246 (citation and quotation marks omitted).

13

Against this background, Barger contends that Kane's substantive due process claim fails because he did not "commit[] a serious battery that shocks the conscience."[28] In support, Barger relies on out-of-circuit cases in which conduct he describes as "well beyond anything alleged against [him]" was found to not be conscience-shocking.[29] For example, Barger cites the Eighth Circuit's decision in *Hawkins v. Holloway*.[30] In *Hawkins*, male police officers alleged that their sheriff violated their substantive due process rights by groping them and making lewd comments.[31] In rejecting the officers' argument, the Court explained that, while the sheriff's conduct was "perverted," the officers' "allegations of inappropriate sexual contact on the sheriff's part [] fall into the category of misconduct for which no constitutional remedy is available."[32]

Barger also cites two unpublished district court cases from the Seventh Circuit, *Nagle v. McKernan*,[33] and *Decker v. Tinnel*.[34] In *Nagle*, the plaintiff alleged that a fire marshal violated her right to bodily integrity while inspecting her place of employment by cornering her in her office, leaning

---

[28] Appellee's Br. at 16.

[29] Appellee's Br. at 21.

[30] 316 F.3d 777 (8th Cir. 2003).

[31] *Id.* at 784–85.

[32] *Id.* at 785.

[33] No. 07 C 680, 2007 WL 2903179 (N.D. Ill. Sept. 28, 2007).

[34] No. 2:04-CV-227, 2005 WL 3501705 (N.D. Ind. Dec. 20, 2005).

against her body, and breathing on her while intimately pressing his face against the back of her head and neck.[35] The Northern District of Illinois disagreed, concluding that—while his behavior was "strange and inappropriate"—the fire marshal's conduct did not shock the conscience.[36]

Likewise, in *Decker*, the plaintiff—an 18-year-old woman—alleged that a police officer violated her right to bodily integrity during a police ride-along by touching her breasts and thighs, kissing her, and repeatedly making sexually suggestive comments.[37] While the Northern District of Indiana characterized the officer's conduct as "improper and reprehensible," it nevertheless held that it "d[id] not rise to the level of a constitutional violation" that shocked the conscience.[38]

We are not persuaded. As explained, wholly contrary to department policy, Barger met with Kane—then considered a possible sexual assault victim—alone in the back room of the police station. During that encounter, Barger charted a course that, viewed in the light most favorable to Kane, violated her right to bodily integrity and shocks the conscience. In the back room, in further violation of department policy, Barger photographed intimate areas of Kane's body with his personal cell phone. In the course of taking the photos, Barger personally pulled Kane's shorts and tank top down to expose her right buttock and upper chest,

---

[35] *Nagle*, 2007 WL 2903179 at *1.

[36] *Id.* at *2.

[37] *Decker*, 2005 WL 3501705 at *1–2.

[38] *Id.* at *9.

15

rather than having Kane do so herself. Moreover, when Barger tugged her shorts, Kane "felt something touch her butt crack which caused her to jump."[39] Further, while Kane repeatedly said her vagina was not injured, Barger's incessant questioning about her vagina ultimately caused Kane to expose her vagina to him.

Barger's conduct after his encounter with Kane only underscores a conscience-shocking disregard for Kane's right to bodily integrity. Indeed, after photographing Kane, Barger failed to document the clothing evidence that Kane provided. That evidence remains unaccounted for. Moreover, after Kane reported Barger's conduct, Barger initially lied to outside investigators and said he never photographed Kane, let alone with his personal cell phone. On this point, after Barger came clean with investigators, he said he lied because he did not want his girlfriend to be jealous of the fact that he photographed Kane.

Altogether, the record—again, viewed in the light most favorable to Kane—supports the inference that Barger acted for his own personal gratification, rather than investigative ends, in both touching Kane and photographing her intimate bodily areas with his personal cell phone in violation of department policy. That is conscience-shocking behavior. Thus, Barger violated Kane's right to bodily integrity.[40]

---

[39] App. 173.

[40] To be clear, today's holding is limited to the facts of this case and by no means suggests that photographing and/or touching a possible sexual assault victim during an investigation is a *de facto* violation of the right to bodily integrity. Indeed, we can conceive of many legitimate

**B.**

Having found Kane's right to bodily integrity was violated, we now ask if that right was clearly established at the time of Barger's conduct.[41]

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right."[42] "We do not require a case directly on point" to find that a right was clearly established.[43] Rather, "[t]o be clearly established," a right need only have "a sufficiently clear foundation in then-existing precedent."[44] In this inquiry, "[w]e look first to applicable Supreme Court precedent."[45] However, "[e]ven if none exists, it may be possible that a robust consensus of cases of persuasive authority in the Courts of Appeals could

---

investigative reasons for engaging in such conduct. Here, however, by acting in a manner that could be interpreted as prioritizing his personal gratification over his investigative duties, Barger fell on the wrong side of the line.

[41] *See Fields v. City of Philadelphia*, 862 F.3d 353, 361 (3d Cir. 2017) (noting that "we look at the state of the law" when the underlying conduct occurred "[t]o determine whether the right [was] clearly established").

[42] *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citation and quotation marks omitted).

[43] *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

[44] *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018).

[45] *L.R.*, 836 F.3d at 247–48.

17

clearly establish a right for purposes of qualified immunity."[46]

"Defining the right at issue is critical to this inquiry," and "[w]e must frame the right in light of the specific context of the case, not as a broad general proposition."[47] This does not mean that "an official action is protected by qualified immunity unless the very action in question has previously been held unlawful."[48] Accordingly, "it need not be the case that the exact conduct has previously been held unlawful so long as the contours of the right are sufficiently clear."[49] Said another way, we do not require a case "directly mirror[ing] the facts" at hand, so long as "there are sufficiently analogous cases that should have placed a reasonable official . . . on notice that his actions were unlawful."[50] As such, "officials

---

[46] *Id.* at 248 (alteration, citation, and quotation marks omitted).

[47] *Id.* (citation and quotation marks omitted).

[48] *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (explaining that "[a]lthough earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding").

[49] *Kedra v. Schroeter*, 876 F.3d 424, 450 (3d Cir. 2017) (citation and quotation marks omitted); *see also id.* at 451–52 (admonishing against defining a right in a narrow and fact-bound way for purposes of qualified immunity).

[50] *L.R.*, 836 F.3d at 249.

can still be on notice that their conduct violates established law even in novel factual circumstances."[51]

Here, the right at issue is an individual's right not to be sexually fondled and illicitly photographed by a police officer investigating his or her case, for the officer's own gratification. Thus, based on the above, "[t]he ultimate question is whether the state of the law when the offense occurred" gave Barger "fair warning" that his conduct violated this right.[52] We conclude that it did.

Intuitively, it seems absurd to analyze whether the right to be free from an officer's sexual assault was clearly established by case law at the time of Barger's conduct. This is because, given the egregiousness of Barger's violation of Kane's personal security and bodily integrity, the right here is so "obvious" that it could be deemed clearly established even without materially similar cases.[53] Indeed, while Barger has not been convicted of a crime, his actions—viewed in the light most favorable to Kane—resemble the crime of indecent

---

[51] *Hope*, 536 U.S. at 741.

[52] *L.R.*, 836 F.3d at 247 (citation and quotation marks omitted).

[53] *Hope*, 536 U.S. at 741; *see also White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam) (noting, in the Fourth Amendment context, that "general statements of the law are not inherently incapable of giving fair and clear warning to officers" in "an obvious case" (citations and quotation marks omitted)).

assault in Pennsylvania, where Barger's conduct occurred.[54] Under Pennsylvania law, "indecent contact" is defined as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person."[55] By touching Kane's intimate areas for his own personal gratification, that is effectively what Barger did here.[56]

Further, at the time of Barger's conduct, both our case law and that of other circuits placed Barger on notice that he acted unconstitutionally. In this regard, our decision in *Doe v. Luzerne Cty.*[57] is illustrative. In *Doe*, we held that male police officers violated a female colleague's Fourteenth Amendment right to privacy by videotaping her partially unclothed body without her consent in a showering area.[58] While *Doe* did not involve the specific right to bodily integrity, *Doe* and the present matter both involved male police officers who deceptively used recording devices to capture images of the intimate bodily areas of vulnerable

---

[54] *See* 18 Pa. Cons. Stat. § 3126(a)(1) (providing that "[a] person is guilty of indecent assault if the person has indecent contact with the complainant . . . for the purpose of arousing sexual desire in the person . . . without the complainant's consent").

[55] *Id.* § 3101.

[56] *See Malley v. Briggs*, 475 U.S. 335, 341 (1986) (explaining that qualified immunity does not protect "those who knowingly violate the law").

[57] 660 F.3d 169 (3d Cir. 2011).

[58] *Id.* at 175–78.

20

females. Without doubt, Barger's "specific conduct" is "sufficiently factually similar" to our decision in *Doe* to have placed him on notice that his conduct was unconstitutional.[59] Thus, in light of these factual similarities, *Doe* announced a "sufficiently clear" right to personal bodily security that "applie[d] with obvious clarity" at the time Barger acted.[60]

Analogous cases from other circuits underscore that the right here was clearly established. For example, in *Haberthur v. City of Raymore*, the Eighth Circuit reversed the dismissal of a plaintiff's substantive due process claim based on an officer's sexual misconduct.[61] There, the plaintiff alleged that the officer reached under her shirt, fondled her chest, and caressed her body while making sexually suggestive remarks.[62] In finding that the plaintiff stated a claim, the Court characterized the officer's conduct as "intrusive, demeaning, and violative of [the plaintiff's] personal integrity."[63]

---

[59] *Kedra*, 876 F.3d at 449 n.19 (citation and quotation marks omitted).

[60] *Id.* at 450 (citation and quotation marks omitted); *see also Brown v. Muhlenberg Twp.*, 269 F.3d 205, 211 n.4 (3d Cir. 2001) ("If the unlawfulness of the defendant's conduct would have been apparent to a reasonable official based on the current state of the law, it is not necessary that there be binding precedent from this circuit so advising.").

[61] 119 F.3d 720, 724 (8th Cir. 1997).

[62] *Id.* at 721, 724.

[63] *Id.* at 724.

Similarly, in *Fontana v. Haskin*, the Ninth Circuit analyzed a highway patrol officer's conduct toward a plaintiff who was handcuffed and detained in the back of a patrol car.[64] On the way to the police station, the defendant officer sat next to the plaintiff in the back seat while his partner drove.[65] At that time, the officer inappropriately put his arm around the plaintiff and massaged her shoulders.[66] The officer also made sexually suggestive statements concerning the plaintiff's appearance and relationship status.[67] While the case was decided on Fourth Amendment grounds because the plaintiff was handcuffed during the encounter, the Court held—in the alternative—that the officer's sexual predation "was egregious and outrageous and shocks the conscience as a matter of law" under the Fourteenth Amendment.[68]

With this context, it is clear that—at the time Barger acted—the law provided fair warning that his sexual misconduct toward Kane was unlawful. As such, the right was clearly established for purposes of qualified immunity.

### III.

For the foregoing reasons, we reverse the District Court's grant of summary judgment and remand for further proceedings consistent with this opinion.

---

[64] 262 F.3d 871, 875 (9th Cir. 2001).

[65] *Id.*

[66] *Id.*

[67] *Id.*

[68] *Id.* at 882 n.7.