PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No.  18-1688
_____

E. D.

v.

DANIEL SHARKEY; BERKS COUNTY RESIDENTIAL
CENTER IMMIGRATION FAMILY CENTER, (BCRC-
IFC); COUNTY OF BERKS, PENNSYLVANIA; DIANE
EDWARDS, DIRECTOR OF BCRC-IFC; JOHN BEHM;
JAMIE HIMMELBERGER; BRITTNEY ROTHERMEL;
ERIKA TAYLOR; MATTHEW MALINOWSKI;
JEREMIAH/JOSH PETRY, ICE EMPLOYEE


COUNTY OF BERKS, PENNSYLVANIA; DIANE
EDWARDS, DIRECTOR OF BCRC-IFC; JAMIE
HIMMELBERGER; BRITTNEY ROTHERMEL; ERIKA
TAYLOR; MATTHEW MALINOWSKI,
Appellants

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5-16-cv-02750)
District Judge: Honorable Edward G. Smith
_____

Argued March 6, 2019

Before: SMITH, *Chief Judge*, AMBRO and RESTREPO,
*Circuit Judges*.

(Opinion Filed: July 1, 2019)

Matthew J. Connell [ARGUED]
Tricia M. Ambrose
MacMain Law Group
433 West Market Group
Suite 200
West Chester, PA 19382

      Counsel of Appellant

Su Ming Yeh [ARGUED]
Angus R. Love
Pennsylvania Institutional Law Project
718 Arch Street
Suite 304 South
Philadelphia, PA 19106

Matthew J. Archambeault
Law Office of Matthew J. Archambeault
1420 Walnut Street
Suite 1188
Philadelphia, PA 19102

      Counsel of Appellee

Sandra S. Park
American Civil Liberties Union
Women's Rights Project
125 Broad Street
18th Floor
New York, NY 10004

Mary Catherine Roper
American Civil Liberties Union of Pennsylvania
P.O. Box 60173
Philadelphia, PA 19106

      Counsel for Amicus Appellees

OPINION OF THE COURT

RESTREPO, *Circuit Judge*

E.D., a female immigration detainee at the Berks County Residential Center -Immigration Family Center (BCRC), brought a § 1983 action against employee Daniel Sharkey, alleging that he violated her Fourteenth Amendment right to bodily integrity after the two had sexual relations. Included in the suit were Sharkey's co-workers and supervisor at BCRC (collectively, the "Defendants"), who E.D. alleged were deliberately indifferent to the violation, as well as Berks County, which allegedly failed to implement policies to prevent the violating conduct. The Defendants and Berks County moved for summary judgment, arguing that the individual staff members were entitled to qualified immunity and that E.D. could not prove a municipal liability claim against the County. The District Court denied their motion, and they have filed this interlocutory appeal.[1]

In determining whether to affirm the denial of qualified immunity, we necessarily address whether immigration detainees are entitled to the same constitutional protections afforded by the Due Process Clause of the Fourteenth Amendment as pre-trial detainees. We hold that immigration detainees are entitled to such protections and, for the reasons that follow, will dismiss the appeal pertaining to Berks County for lack of appellate jurisdiction and will affirm the denial of the Defendants' request for qualified immunity.

## I. Factual and Procedural Background

---

[1] In the same order, the District Court granted summary judgment in favor of Defendants John Behm and the BCRC, and granted judgment in favor of Berks County with regard to claims for punitive damages against the County. No appeal arose from these rulings.

E.D. entered the United States with her three-year-old son in or around May 2014, seeking refuge from domestic violence and sexual assault in Honduras. She and her son were transferred from an immigration facility in Texas to the BCRC, which detains approximately ninety women and children pursuant to a contract with United States Immigration and Customs Enforcement (ICE).

Approximately a month after E.D.'s arrival, BCRC employee Daniel Sharkey began giving food and treats to E.D. and her son. His overtures escalated to allowing E.D. to use his cell phone and promising to help with her immigration status. Within weeks Sharkey began to touch and kiss E.D., who refused to reciprocate. He turned angry, insulted E.D., and told her she would be deported if she told anyone about his advances.

In July 2014, Sharkey began forcing E.D. to engage in sexual intercourse. On one occasion they had intercourse in a bathroom and a seven-year-old girl witnessed the encounter. In August 2014, E.D. and Sharkey were having intercourse in another resident's room when the resident returned. Within the month, Sharkey either left or was terminated from his employment at BCRC. He was later arrested and convicted of institutional sexual assault under Pennsylvania statute 18 Pa.C.S.A. § 3124.2, which was enacted in February 2012.

E.D. alleges that, by August 2014, staff members at the BCRC were aware of Sharkey's conduct but failed to take steps to protect her. Eventually detainees complained and BCRC Director Diane Edwards was notified of the relationship. An investigation was launched. When questioned by staff members, E.D. denied Sharkey had sexually assaulted her because she feared deportation. E.D. eventually told her immigration attorney about Sharkey's conduct, and her attorney relayed the incidents to ICE officials. E.D. alleges that, after the relationship was reported, the defendant BCRC staff members retaliated by denying her and her son privileges and instituting a restrictive clothing policy that led to other detainees isolating her.

According to E.D., ICE policies and standards prohibit staff from sexually abusing immigration detainees and define

4

any sexual contact, regardless of whether it is consensual, as sexual abuse. Moreover, ICE standards require that the Field Office Director be notified any time an employee, contractor, or volunteer is alleged to be a perpetrator of sexual abuse against a detainee. The ICE/DRO (Detention and Removal Operations) Residential Standards require residential facilities holding immigration detainees to affirmatively act to prevent sexual abuse and sexual assault of the residents, which includes providing staff training and prompt, effective intervention.

In June 2017, E.D. filed her third amended complaint in District Court against Daniel Sharkey, Berks County, the BCRC, the center's director Diane Edwards, and staff members John Behm, Janie Himmelberger, Brittany Rothermel, Erika Taylor, and Matthew Malinowski.[2] E.D. claimed, *inter alia*, that her Fourteenth Amendment due process rights were violated by the employees and supervisor who were deliberately indifferent to Sharkey's conduct and by Berks County for failing to implement policies and procedures to prevent sexual abuse at the residential center. She further alleged that the Defendants retaliated against her after she reported the sexual abuse, thereby violating her due process and First Amendment rights. After the completion of discovery, all the defendants except for Daniel Sharkey moved for summary judgment.

The District Court granted the defendants' joint motion with regard to claims against the BCRC, ruling that it was not a proper defendant under 42 U.S.C. § 1983 because it did not have an existence separate from Berks County. The Court also granted summary judgment in favor of BCRC employee John Behm and rejected E.D.'s claims for punitive damages against Berks County, but otherwise denied the motion. The remaining defendants filed an interlocutory appeal challenging the District Court's conclusion that E.D. pled the violation of a known constitutional right, that the BCRC employees and supervisor were not entitled to qualified immunity, and that a

---

[2] E.D.'s third complaint included Immigration and Customs Enforcement (ICE) agent Josh Petry as a defendant, but the District Court granted Petry's motion to dismiss on August 11, 2017.

factfinder could reasonably find Berks County liable for Sharkey's conduct.

## II.   Jurisdiction and Standard of Review

Generally, our appellate jurisdiction under 28 U.S.C. § 1291 is limited to appeals of District Courts' final orders. The denial of a motion for summary judgment, which allows an issue to proceed to trial, is generally not considered a final order. *Hamilton v. Leavy*, 322 F.3d 776, 781-82 (3d Cir. 2003). However, section 1291 does allow interlocutory review of certain collateral orders because they "finally determine claims of right . . . too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Forbes v. Twp. of Lower Merion*, 313 F.3d 144, 147 (3d Cir. 2002) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)).

Orders denying qualified immunity are eligible for review under the "collateral-order doctrine" because qualified immunity entitles the defendant to "*immunity from suit* rather than a mere defense to liability and [the entitlement] is effectively lost if a case is erroneously permitted to go to trial." *Id.* (quoting *Mitchell v. Forsyth*, 572 U.S. 511, 526-27 (1985)) (emphasis in original and alterations omitted). However, the denial of qualified immunity can be reviewed only to the extent that the analysis denying the defense turns on an issue of law. *Id.*; *Bistrian v. Levi*, 696 F.3d 352, 364 (3d Cir. 2012). In these instances, where the issue appealed concerns not whether the parties might be able to prove given facts but rather whether the facts show a violation of clearly established law, we have jurisdiction "but we must adopt the facts assumed by the District Court." *Walker v. Horn*, 286 F.3d 705, 710 (3d Cir. 2002) (citing *Johnson v. Jones*, 515 U.S. 304, 319 (1995)). In deciding the summary judgment motion, the District Court must accept as true the nonmovant's evidence and draw all reasonable inferences from the record in the nonmovant's favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986); *see also Tolan v. Cotton,* 572 U.S. 650, 656-57 (2014).

      a. <u>Jurisdiction to review denial of Defendants' qualified immunity.</u>

6

In deciding that Sharkey's co-workers and supervisor were not entitled to qualified immunity, the District Court concluded that E.D. sufficiently alleged a violation of a constitutional right and that the right was clearly established. *See L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 240-41 (3d Cir. 2016). On appeal, the Defendants challenge the conclusion that E.D.'s evidence of Sharkey's conduct raised such a violation. In so doing, they raise an appealable issue of law. We exercise plenary review over questions of law raised by the denial of qualified immunity. *Schieber v. City of Philadelphia*, 320 F.3d 409, 415 (3d Cir. 2003) (citing *Eddy v. Virgin Islands Water & Power Auth.*, 256 F.3d 204, 208 (3d Cir. 2001)).

b. <u>No jurisdiction to review denial of summary judgment for Berks County.</u>

We do not have jurisdiction to review the District Court's order denying summary judgment in favor of Berks County. Unlike the individual Defendants, Berks County cannot assert a qualified immunity defense, and the denial of summary judgment to Berks County therefore does not trigger collateral order doctrine review. *See Owner v. City of Independence, Mo.*, 445 U.S. 622, 650 (1980) (under § 1983, a municipality is not entitled to qualified immunity from liability for violations of constitutional rights). The District Court denied summary judgment because it determined that the County's liability depended on the resolution of issues of material fact, which must be determined by a fact-finder. To the extent the County asserts the District Court erred in identifying facts to support its order denying summary judgment, this argument must be made in an appeal following the conclusion of the case. *Forbes v. Twp. of Lower Merion*, 313 F.3d at 147-48 (citing *Ziccardi v. City of Phila.*, 288 F.3d 57, 61 (3d Cir. 2002)).

## III. The Denial of Qualified Immunity for the Individual Defendants

Having ascertained that we have jurisdiction to review the denial of qualified immunity insofar as it raises a question of law, we now assess whether the District Court properly concluded that E.D. sufficiently pled the violation of a known constitutional right of which a reasonable person would be

aware. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001) (citations omitted). While the plaintiff must sufficiently plead a violation, the burden is on the defendants to establish they are entitled to qualified immunity. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 142 n. 15 (3d Cir. 2001). Officials demonstrate they are entitled to qualified immunity only if they can show that a reasonable person in their position at the relevant time could have believed, in light of clearly established law, that their conduct comported with recognized legal standards. *Id*.

The District Court determined that E.D. sufficiently alleged a plausible violation of her Fourteenth Amendment due process right to bodily integrity, which it defined as "the right to have a custodial government officer protect an immigration detainee from sexual assault of which the officer is aware." It further determined this right to be clearly established at the time of Sharkey's challenged conduct. The Court denied the individual Defendants qualified immunity because they failed to demonstrate their conduct comported with established legal standards, which would have required proving that they were either unaware of Sharkey's conduct or they were aware but acted reasonably to protect E.D. from the assault. We agree with the District Court that the Defendants did not meet this burden, and therefore affirm the denial of summary judgment.

a. Alleged violation of constitutional right.

This Circuit has longed viewed the legal rights of an immigration detainee to be analogous to those of a pretrial detainee. [3] We now join a number of our sister Circuits in expressly holding that immigration detainees are entitled to the same due process protections. *Charles v. Orange County*, --- F.3d ---, 2019 WL 2236391 (2d Cir. May 24, 2019); *Chavero-*

---

[3] Panels of this Circuit have repeatedly held in unpublished decisions that an immigration detainee is the equivalent of a pretrial detainee, and that a pretrial detainee's constitutional claims are considered under the Due Process Clause: *Adekoya v. Chertoff*, 431 Fed. Appx. 85, 88 (3d Cir. 2011); *Contant v. Sabol*, 431 Fed. App'x. 177, 178 (3d Cir. 2011); *Foreman v. Lowe*, 261 Fed. App'x. 401, 403 (3d Cir. 2008); *Harvey v. Chertoff*, 263 Fed. App'x. 188, 191 (3d Cir. 2008); *Dhalan v. Dep't of Homeland Sec.*, 215 F. App'x. 97, 100 (3d Cir. 2007).

*Linares v. Smith*, 782 F.3d 1038, 1041 (8th Cir. 2015); *Belbachir v. County of McHenry*, 726 F.3d 975, 979 (7th Cir. 2013); *Porro v. Barnes*, 624 F.3d 1322, 1326 (10th Cir. 2010); *Edwards v. Johnson*, 209 F.3d 772, 778 (5th Cir. 2000).

"[W]hen pretrial detainees challenge their conditions of confinement, we must consider whether there has been a violation of the Due Process Clause of the Fourteenth Amendment." *Hubbard v. Taylor*, 538 F.3d 229, 231 (3d Cir. 2008). "In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicated only the protection against deprivation of liberty without due process of law, we think the proper inquiry is whether those conditions amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Under the Due Process clause, "a detainee may not be punished prior to an adjudication of guilt." *Id.* To determine whether challenged conditions of confinement amount to punishment, this Court determines whether a condition of confinement is reasonably related to a legitimate governmental objective; if it is not, we may infer "that the purpose of the governmental action is punishment that may not be constitutionally inflicted upon detainees *qua* detainees." *Hubbard*, 538 F.3d at 232 (quoting *Bell*, 441 U.S. at 539) (emphasis in original).

The right to "not be sexually assaulted by a state employee while in confinement" was clearly established at the time of Sharkey's conduct. *Beers-Capitol*, 256 F.3d at 143 n.15 (citing *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994), and *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 726 (3d Cir. 1989)). E.D.'s allegations of Sharkey's sexual assault, which could not have served a legitimate governmental objective and thereby constituted impermissible punishment, set forth a plausible violation of her right to personal bodily integrity protected by the Due Process Clause of the Fourteenth Amendment. *Stevenson v. Carroll*, 495 F.3d 62, 67 (3d Cir. 2007) (citing *Bell*, 441 U.S. at 535); *Kane v. Barger*, 902 F.3d 185, 192 (3d Cir. 2018).

Regarding Sharkey's co-workers' liability, this Court has recognized a detainee's right to be protected by state actors who knew of ongoing violating conduct under the theory that a reasonable state official "could not believe that [their] actions

9

comported with clearly established law while also believing that there is an excessive risk to the plaintiffs and failing to adequately respond to that risk." *Beers-Capitol*, 256 F.3d at 143 n.15; *see also Ricks v. Shover*, 891 F.3d 468, 479 (3d Cir. 2018) (holding that a prison guard who knows of, but fails to stop, ongoing constitutional violations against a prisoner violates the prisoner's Eighth Amendment rights). Supervisor Diane Edwards' claim for immunity was properly denied because this Court has recognized the right to have state supervisory officials that neither condone nor authorize, through either their actions or inactions, sexual assault committed by another state actor. *See Stoneking*, 882 F.2d at 730-731 (reversing the grant of qualified immunity where plaintiff proffered a "tenable theory" that supervisors' practices amounted to condoning teacher's sexual abuse of student). We therefore agree with the District Court that E.D.'s claims against the individual Defendants alleged the violation of a known constitutional right.

b. Alleged constitutional right clearly established.

We further agree that a detainee's right to be protected by state officials aware of ongoing sexual assault was clearly established at the time of Sharkey's conduct. "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Kane,* 902 F.3d at 194 (citing *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). "[I]t need not be the case that the exact conduct has previously been held unlawful so long as the 'contours of the right' are sufficiently clear." *Kedra v. Schroeter*, 876 F.3d 424, 450 (3d Cir. 2017) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Initially, the District Court fittingly recognized that Sharkey's conduct was illegal in the state in which it occurred. He committed institutional sexual assault in violation of Pennsylvania Statute 18 Pa.C.S. § 3124.2, which forbids an employee of a "residential facility serving children and youth" from having sexual intercourse with a "detainee," regardless of whether the detainee gave consent. *See* 18 Pa.C.S. § 3124.2 (a). That Sharkey's conduct was illegal renders E.D.'s right to be free from sexual assault "so 'obvious' that it could be deemed clearly established even without materially similar cases."

*Kane*, 902 F.3d at 195 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

In any event, there is a materially similar case, decided twelve years before E.D. had entered the country. In 2001 this Court held that juvenile detention facility employees could be liable for their co-worker's sexual conduct with an inmate if they knew of but ignored the risk their co-worker posed. *Beers-Capitol,* 256 F.3d at 135. This same opinion held that facility supervisors could be liable for implementing deficient policies that created an unreasonable risk of a violation if they were aware of but indifferent to the risk, and the injury resulted from their own deficient policies. *Id*. Thus, the BCRC Defendants had notice that Sharkey's conduct was violative, and their purported failure to intervene and protect E.D. could be found to have violated her right to be free of sexual assault, of which a reasonable person would have been aware.

On appeal, the individual Defendants argue E.D. failed to allege a constitutional right violation because the sexual intercourse between Sharkey and E.D. was consensual. They further claim that the BCRC was "drastically different" from a prison, and that Sharkey was "not akin to a prison guard." We agree with the District Court that the evidence regarding whether the sexual intercourse was consensual "presents a sufficient disagreement to require submission to a jury," and therefore constitutes a genuine dispute of material fact. *Liberty Lobby*, 477 U.S. at 251-52.

However, given the findings of the District Court, which we adopt when reviewing the denial of summary judgment, we question whether the issue of consent will be deemed relevant at trial. *Schieber v. City of Phila.,* 320 F.3d at 415. The Court found that E.D. was "detained" and that, under ICE policies and standards, as well as Pennsylvania law, any sexual contact between a staff member and a detainee constitutes sexual abuse *regardless of consent.* We find, therefore, the Court's factual findings support its ruling that E.D. sufficiently pled a due process rights violation by alleging she and Sharkey had sexual contact, notwithstanding its finding that whether she consented to the contact is in dispute.

## IV.    Deliberate Indifference Sufficiently Alleged

Having established that E.D. sufficiently alleged the violation of a known constitutional right, we now assess the District Court's finding that she sufficiently established the Defendants "knowingly and unreasonably disregarded an objectively intolerable risk of harm" embodied by their co-worker, Daniel Sharkey. *Beers-Capitol*, 256 F.3d at 132 (quoting *Farmer*, 511 U.S. at 837 (1994)).  In determining whether E.D. met her burden in pleading that the Defendants possessed a culpable state of mind and failed to act reasonably, she is entitled as the non-movant to the benefit of all reasonable inferences drawn from the evidence. *Hamilton v. Leavy*, 117 F.3d 742, 748 (3d. Cir. 1997).

Defendants argue on appeal that the evidence established they knew nothing of the ongoing sexual relationship, whereas E.D. argues the record proves the BCRC staff knew of Sharkey's violative conduct and they were therefore required by law to protect her.  The District Court found that the Defendants' awareness of the alleged violation, and whether they acted reasonably in response, presents a genuine dispute of a material fact.  Although the Court failed to make specific factual findings in its order, facts identified in is previous filings support its ruling that a factfinder could plausibly conclude the Defendants "must have known" of the risk to E.D.'s rights. *Hamilton*, 117 F.3d at 748.

In a memorandum opinion deciding a motion to dismiss, the District Court cited E.D.'s allegations that the BCRC is a small facility and the staff has "frequent contact and interaction" with the detainees, which permitted the Defendants to observe Sharkey with E.D. and become aware of their intimate relationship.  Moreover, the Court cited E.D.'s claims that the relationship became "obvious" to the other detainees, motivating them to complain to the BCRC staff about Sharkey's conduct.[4]  Regarding Supervisor Edwards, the

---

[4] The District Court filed a memorandum opinion in response to a motion to dismiss filed by defendant Jeremiah Petry, an ICE deportation officer who worked at the BCRC. The Court

Court found that E.D. raised a triable issue of fact as to whether the policies at the BCRC created an unreasonable risk of sexual assault, whether Edwards was aware of that risk, and whether E.D.'s injury was the result of the purported deficient policies. To support this finding, the Court cited E.D.'s response to the summary judgment motion, in which she alleged Edwards "has oversight over everything in the program for the BCRC, including training," and that the training consisted of Sharkey "going through documents and signing them." She further alleged that the sexual assault training, the curriculum of which Edwards approved, consisted of a printed-out slides that employees read independently before taking a quiz.

Based on these adaptations by the District Court, we agree there is enough evidence to support an inference that the Defendants knew of the risk facing E.D., and that their failure to take additional steps to protect her – acting in their capacity as either a co-worker or supervisor – "could be viewed by a factfinder as the sort of deliberate indifference" to a detainee's safety that the Constitution forbids. *Hamilton*, 117 F.3d at 749. We agree there is a genuine need for trial to determine whether the Defendants are liable, and that summary judgment was therefore properly denied. *See Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992)) ("In practical terms, if the opponent has exceeded the 'mere scintilla' threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent"). [5]

---

granted Petry's motion with prejudice, finding that E.D. failed to state a claim upon which relief could be granted.

[5] In the order deciding the summary judgment motion, the District Court found that whether Sharkey's co-workers retaliated against E.D. after she reported the offensive conduct and thereby violated her First Amendment rights was a genuine issue of material fact. This ruling was not raised by the Defendants on appeal, rendering any objection to the Court's findings waived. The Federal Rules of Appellate Procedure provide that an appellant's brief must contain "appellant's contentions and the reasons for them." Fed. R. App. P.

## V.     Conclusion

Given that no final order has been issued with regard to Berks County, we do not have jurisdiction to review the decision to deny summary judgment in its favor. We will affirm the District Court's decision to deny qualified immunity for the individual Defendants, and therefore affirm the denial of their motion for summary judgment. We will remand this case for trial so that the liability of the parties may be decided by a factfinder.

---

28(a)(9)(A). We have held that the absence of any argument renders the issue waived. *United States v. Hoffecker*, 530 F.3d 137, 162 (3d. Cir. 2008). *See also United States v. DeMichael*, 461 F.3d 414, 417 (3d Cir. 2006) ("An issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue will not suffice to bring that issue before this court." (citation omitted)); *United States v. Irizarry*, 341 F.3d 273, 305 (3d Cir. 2003) ("An appellant who falls to comply with this requirement fails to preserve the arguments that could otherwise have been raised.").

SMITH, *Chief Judge*, concurring.

I join my colleagues' sound reasoning in upholding the District Court's denial of qualified immunity and dismissing the remainder of the appeal. I write separately to highlight a concern with the structure of the order under review.

When summary judgment has been denied on qualified immunity grounds, we have jurisdiction to "determine whether the facts identified by the District Court constitute a violation of a clearly established constitutional right." *Atkinson v. Taylor*, 316 F.3d 257, 261 (3d Cir. 2003). Here, the District Court addressed the summary judgment motion by issuing an order, unaccompanied by a supporting opinion. Instead, the order included a lengthy footnote setting forth the District Court's reasoning. This "footnote order" practice is frequently employed by our colleagues in the Eastern District of Pennsylvania, and it is not my desire to interfere with a longstanding custom and practice of that district. Indeed, in my view, there is nothing inherently problematic with so-called "footnote opinions." In this case, however, the footnote neglects to identify a single undisputed fact, and provides only cursory discussion—without reference to the evidence of record—to support the conclusion that disputes of material fact exist.

Because Appellants have raised on appeal relatively narrow legal claims that are capable of resolution without the need to closely examine the nuances of the District Court's fact-finding, I see no need to remand this matter

for a more comprehensive opinion. Nonetheless, while the District Court provided just enough detail for us to render a decision in this case, it cannot be overlooked that perfunctory treatment of the factual record does not comport with the spirit of the supervisory rule that we announced in *Forbes v. Township of Lower Merion*, 313 F.3d 144 (3d Cir. 2002). In *Forbes*, we observed that providing only "spare comments" in a qualified immunity denial "greatly hampered" our ability to conduct meaningful appellate review. *Id.* at 148. We therefore expressly set forth a rule applicable to all qualified immunity decisions: "we . . . require the District Courts to specify those material facts that are and are not subject to genuine dispute and explain their materiality." *Id.* at 146.

*Forbes* has been the rule of our Court for well over a decade and a half, and remains so for good reason. A comprehensive and detailed summary judgment opinion, specifying those facts that are undisputed as well as those that are material and subject to genuine dispute, is vital—and often essential—to our meaningful review on appeal. I write to underscore the continued importance that our judges attach to compliance with the *Forbes* rule, and to discourage cursory footnote treatment of the factual record in qualified immunity decisions.