**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1432
_____

ARLANE JAMES, In Re: WILLIE GIBBONS; J. R. G., a
minor, by his mother and legal guardian, Ikeya Crawford; D.
K. L., a minor, by his mother and legal guardian, Angel
Stephens; L. M. G., a minor, by her mother and legal
guardian, Angel Stephens

v.

NEW JERSEY STATE POLICE; STATE OF NEW
JERSEY; JOHN DOES 1-10; NOAH BARTELT, State
Trooper; PHILLIP CONZA, State Trooper; DANIEL
HIDDER, State Trooper; MICHAEL KORIEJKO, State
Trooper; JAMES MCGOWAN, Sergeant, in their individual
and official capacities

NOAH BARTELT,
                            Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 1-13-cv-03530)
District Judge: Honorable Joseph H. Rodriguez
_____

Argued: January 14, 2020

Before: HARDIMAN, PORTER, and PHIPPS,
*Circuit Judges*

(Opinion Filed: April 21, 2020)
_____

Yvette C. Sterling **[Argued]**
Sterling Law Firm
400 High Street
Burlington City, NJ 08016

Ronald C. Hunt
Hunt Hamlin & Ridley
60 Park Place
Suite 1602
Newark, NJ 07102

*Counsel for Appellees*

Gurbir S. Grewal, Attorney General of New Jersey
Melissa H. Raksa, Assistant Attorney General
Marvin L. Freeman, Deputy Attorney General **[Argued]**
Office of Attorney General of New Jersey
Department of Law & Public Safety
25 Market Street
Richard J. Hughes Justice Complex
Trenton, NJ 08625

*Counsel for Appellant Noah Bartelt*

_____

OPINION OF THE COURT

_____

PORTER, *Circuit Judge*.

Qualified immunity protects government officials from being held liable for damages when their conduct does not violate a citizen's clearly established rights. As the Supreme Court has noted, qualified immunity advances a policy of "shield[ing] officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The issue here is whether New Jersey State Trooper Noah Bartelt is entitled to qualified immunity after using deadly force against Willie Gibbons, a suspect who refused to drop his gun when Trooper Bartelt ordered him to do so.

Gibbons's mother (Arlane James) and minor children (J. R. G., D. K. L., and L. M. G.) (collectively, "James") filed an action under 42 U.S.C. § 1983 against Trooper Bartelt and other state actors alleging constitutional violations arising from Trooper Bartelt's use of force against Gibbons. All individual defendants moved for summary judgment based on qualified immunity. The District Court granted qualified immunity to all individual defendants except Trooper Bartelt. The District Court then denied James's and Trooper Bartelt's cross-motions for reconsideration.

Trooper Bartelt is entitled to qualified immunity because he did not violate Gibbons's clearly established rights. Thus, we will reverse the District Court's denial of qualified immunity to Trooper Bartelt and remand with instructions to grant judgment in his favor.

**I**

Trooper Bartelt appeals the District Court's order denying summary judgment based on qualified immunity under the "collateral-order doctrine." *See E. D. v. Sharkey*, 928 F.3d 299, 305 (3d Cir. 2019).[1] Under this doctrine, our review is plenary and "strictly limited to the legal questions involved." *In re Montgomery Cty.*, 215 F.3d 367, 372 (3d Cir. 2000). We lack jurisdiction to review the District Court's determination that a factual dispute is genuine, but we have jurisdiction to consider whether the disputed fact is material to the issue on which a party sought summary judgment. *See Davenport v. Borough of Homestead*, 870 F.3d 273, 278 (3d Cir. 2017); *see also* Fed. R. Civ. P. 56(a). Thus, we accept the District Court's facts as true for purposes of this appeal, *see id.*, and we will review "the record to determine what [other] facts the [D]istrict [C]ourt . . . likely assumed," *Johnson v. Jones*, 515 U.S. 304, 319 (1995).

---

[1] The District Court had subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343. We have jurisdiction over this appeal under 28 U.S.C. § 1291 and the collateral-order doctrine. *See E. D.*, 928 F.3d at 305.

## II

Willie Gibbons lived with Angel Stephens in Bridgeton, New Jersey. After the two had a domestic argument on May 24, 2011, Stephens called 911 and reported that "[Gibbons] hit her" and that Gibbons had a "gun in his truck." A12–13. The police drove to Stephens's house, and Stephens and Gibbons each completed written statements describing the incident. Stephens then obtained a temporary restraining order from Fairfield/Downe Joint Municipal Court against Gibbons. The order prohibited Gibbons from possessing firearms and from returning to Stephens's house.

The next day, on May 25, 2011, Gibbons requested a police escort to retrieve possessions from Stephens's house, but the police informed him that he needed judicial approval for the visit. Gibbons went to Stephens's house alone anyway, in violation of the court's temporary restraining order. Another argument followed between Gibbons and Stephens. Stephens was speaking with a friend on the phone at the time, so the friend called the police to report that Gibbons had violated the restraining order. Gibbons then left Stephens's house.

Trooper Philip Conza soon arrived at the house and Stephens told him that Gibbons had waved a gun throughout their argument. Trooper Conza told Stephens to make a complaint against Gibbons at the police barracks and reported over the police radio that Gibbons had brandished a firearm. Trooper Conza, joined by Troopers Bartelt and Michael Korejko, then searched for Gibbons at the nearby home of Gibbons's mother, Arlane James. James told the Troopers that she did not know where Gibbons was and that he may be off his medication.[2]

While Stephens was driving to the barracks, she saw Gibbons walking alongside the road. She called 911 and reported Gibbons's location. Troopers Bartelt, Conza, and Korejko, along with Trooper Daniel Hidder responded to the location.

---

[2] Gibbons was diagnosed with schizophrenia and had been prescribed medication to treat this condition.

When Trooper Bartelt pursued Gibbons, he knew that Gibbons: (1) had violated a restraining order; (2) was in possession of a firearm that he had brandished within the last hour; and (3) was reportedly mentally ill and may not have been taking his medication.[3]

Trooper Bartelt was the first officer to engage Gibbons. As Trooper Bartelt approached Gibbons by car (with his window down), he heard Gibbons say, "stay away from me." A16. Trooper Bartelt then parked his car and, while exiting, observed that Gibbons was holding a gun in his left hand and pointing it at his own head. Trooper Bartelt drew his weapon, stood behind his car door, twice told Gibbons to drop his weapon, and ordered him to "come over here." *Id.* Gibbons did not comply with the commands and may have repeated, "stay away from me." *Id.* Separated by seven to fifteen yards, Trooper Bartelt then shot Gibbons twice. Trooper Bartelt shot Gibbons within seconds of stopping his car. Trooper Conza arrived on the scene before Trooper Bartelt fired the shots. Troopers Korejko and Hidder arrived shortly after. Gibbons was flown to the hospital but died that night.

### III

Trooper Bartelt challenges the District Court's ruling denying him qualified immunity. Qualified immunity has two prongs. "First, a court must decide 'whether the facts that a plaintiff has . . . shown make out a violation of a constitutional right.'" *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 (3d Cir. 2015) (alteration in original) (quoting *Pearson*, 555 U.S. at 232). "And second, the court must determine 'whether the right at issue was "clearly established" at the time of defendant's alleged misconduct.'" *Id.* We may begin with either prong. *Id.*

The District Court held that Trooper Bartelt failed to satisfy both prongs, so he was not entitled to qualified

---

[3] The District Court did not specifically find these three facts. But because these facts are undisputed by the parties, we find that they are among the facts that the District Court "likely assumed." *See Johnson*, 515 U.S. at 319.

immunity. On appeal, Trooper Bartelt argues that the District Court erred by finding that he may have violated one of Gibbons's constitutional rights and by concluding that the constitutional right was clearly established.

We will not review the District Court's holding that Trooper Bartelt may have violated a constitutional right—the first prong of qualified immunity. The District Court based this holding on its conclusion that "genuine issues of disputed fact" existed, but it did not identify these disputed facts. *See* A30. To the extent that the District Court is correct that these unstated facts are material to the inquiry, we lack jurisdiction under the collateral-order doctrine to review its holding on this prong. *See Davenport*, 870 F.3d at 278; *see also Johnson*, 515 U.S. at 319. Thus, we will assume without deciding that Trooper Bartelt violated one of Gibbons's constitutional rights and proceed to qualified immunity's second prong.[4]

## IV

Qualified immunity's second prong "shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Pearson*, 555 U.S. at 231).

---

[4] To aid our review in qualified immunity cases, we announced a supervisory rule in *Forbes v. Township of Lower Merion* for all cases "in which a summary judgment motion based on qualified immunity is denied on the ground that material facts are subject to genuine dispute." 313 F.3d 144, 146 (3d Cir. 2002). Under *Forbes*'s supervisory rule, district courts must "specify those material facts that are and are not subject to genuine dispute and explain their materiality." *Id.*

Here, the District Court found that genuine disputes of material fact precluded it from concluding whether Trooper Bartelt violated one of Gibbons's constitutional rights. But it did not specify which material facts were in dispute or explain their materiality. We reiterate that *Forbes*'s supervisory rule remains in effect. *See E. D.*, 928 F.3d at 310–11 (Smith, C.J., concurring).

"Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (internal quotation marks and citation omitted). The inquiry is an "objective (albeit fact-specific) question," under which "[an officer]'s subjective beliefs . . . are irrelevant." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). Because the inquiry is from the perspective of a reasonable officer, we "consider[] only the facts that were knowable to the defendant officer[]." *White v. Pauly*, 137 S. Ct. 548, 550 (2017) (citation omitted).

In rare cases, a plaintiff may show that a right is clearly established if the "violation [is] 'obvious.'" *See Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (quoting *Hope v. Pelzer*, 536 U.S. 730, 738 (2002)). In the excessive-force context, "obvious cases" are those that obviously violate *Graham v. Connor*, 490 U.S. 386 (1989), and *Tennessee v. Garner*, 471 U.S. 1 (1985). *See Brosseau*, 543 U.S. at 199. "[*Graham*] clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness." *Id.* at 198 (citation omitted). And *Garner* held that "[deadly] force may not be used unless it is necessary to prevent . . . escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." 471 U.S. at 3.

But in most cases, a plaintiff must show that a right is clearly established because "the violative nature of *particular* conduct [was] clearly established.'" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017) (quoting *Mullenix*, 136 S. Ct. at 308). In other words, "settled law," *Wesby*, 138 S. Ct. at 590, must "'squarely govern[]' the specific facts at issue," *see Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *Mullenix*, 136 S. Ct. at 309). The Supreme Court has explained that a plaintiff may satisfy this standard by "identify[ing] a case where an officer acting under similar circumstances as [the defendant officer] was held to have violated the [constitutional provision at issue]." *White*, 137 S. Ct. at 552.

For qualified-immunity purposes, "clearly established rights are derived either from binding Supreme Court and Third Circuit precedent or from a 'robust consensus of cases of persuasive authority in the Courts of Appeals.'" *Bland v. City of Newark*, 900 F.3d 77, 84 (3d Cir. 2018) (citation omitted); *see Wesby*, 138 S. Ct. at 589–90 ("To be clearly established, a legal principle must . . . [be] dictated by controlling authority or a robust consensus of cases of persuasive authority[.]" (citations and internal quotation marks omitted)). So we first look to factually analogous precedents of the Supreme Court and the Third Circuit. *See L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 247–48 (3d Cir. 2016). Then, we examine persuasive authorities, such as our nonprecedential opinions and decisions from other Courts of Appeals. *See id.* We may consider all relevant cases under this inquiry, not just those cited by the parties. *See Elder v. Holloway*, 510 U.S. 510, 516 (1994).

**V**

On appeal, Trooper Bartelt argues that he did not violate a clearly established right. We agree because, at the time, no Supreme Court precedent, Third Circuit precedent, or robust consensus of persuasive authority had held that "an officer acting under similar circumstances as [Trooper Bartelt] . . . violated the Fourth Amendment." *See White*, 137 S. Ct. at 552. Because the events here occurred on May 25, 2011, we will consider only precedents that clearly established rights as of that date. *See Bryan v. United States*, 913 F.3d 356, 363 (3d Cir. 2019).

## A

First, we consider whether Trooper Bartelt violated a right that was clearly established by Supreme Court precedent.[5] He did not.

The closest factually analogous Supreme Court precedent, *Kisela v. Hughes*, 138 S. Ct. 1148, is instructive. *Kisela* involved a May 2010 police standoff bearing some similarity to the standoff between Trooper Bartelt and Gibbons. *Id.* at 1150–51. In *Kisela*, the Supreme Court held that an officer did not violate a clearly established right by shooting a suspect who was armed with a knife. *Id.* at 1154–55. The suspect had not responded to at least two police commands to drop the knife and "had been acting erratically" before the police arrived. *Id.* at 1151. And the officer "had mere seconds to assess the potential danger to [a bystander who was less than six feet away]." *Id.* at 1153.

---

[5] The District Court identified the clearly established right that Trooper Bartelt may have violated as follows: "an officer may not use deadly force against a suspect unless the officer reasonably believes that the suspect poses a threat of serious bodily injury to the officer or others." A28 (quoting *Lamont v. New Jersey*, 637 F.3d 177, 185 (3d Cir. 2011) (citing *Garner*, 472 U.S. at 3, 11)). We disagree because the District Court viewed the "right" at too "high [a] level of generality." *See City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019). As the Supreme Court has explained, "*Garner* . . . do[es] not by [itself] create clearly established law outside 'an obvious case.'" *White*, 137 S. Ct. at 552 (citation omitted).

This is not an obvious case. The facts here show that a reasonable officer could have perceived that Gibbons posed "a serious threat of immediate harm to others." *Davenport*, 870 F.3d at 281 (collecting cases and observing that "courts have found 'obvious' cases [based on *Garner*] only in the absence of a serious threat of immediate harm to others"); *cf. Kane v. Barger*, 902 F.3d 185, 195 (3d Cir. 2018) (finding that a violation was "obvious" because "it seem[ed] absurd to analyze whether the right . . . was clearly established by case law at the time of [the defendant's] conduct"). We thus reject the District Court's clearly established analysis.

The Supreme Court distinguished "the specific facts at issue" in *Kisela* from the facts in precedents that a lower court had relied on to find that the defendant had violated a clearly established right. *Id.* The Supreme Court assumed that the defendant had violated a right but held that neither Supreme Court nor circuit precedent was factually analogous enough to clearly establish the right. *Id.* at 1152–53. It identified several facts that distinguished the scenario it considered from the factual scenarios of earlier precedents: (1) "[the suspect] was armed with a large knife"; (2) the suspect "ignored officers' orders to drop the weapon"; (3) the suspect "was within striking distance of [a bystander]"; and (4) "the situation unfolded in less than a minute." *Id.* at 1154. It concluded that these factual differences "leap[ed] from the page" and that the unlawfulness of the "new set of facts" in *Kisela* was not clearly established by Supreme Court or circuit caselaw. *Id.* (citation omitted).

Many of the same distinguishing facts are present here: (1) Gibbons was armed with a gun; (2) Gibbons ignored Trooper Bartelt's orders to drop his gun; (3) Gibbons was easily within range to shoot Troopers Bartelt or Conza; and (4) the situation unfolded in "seconds." *See* A16–18.

In sum, Trooper Bartelt did not violate a right that had been clearly established by Supreme Court precedent.

**B**

Next, we consider whether Trooper Bartelt violated a right that had been clearly established by Third Circuit precedent. None of our relevant precedents present a sufficiently similar factual scenario at the "high 'degree of specificity'" that Supreme Court precedent requires. *See Wesby*, 138 S. Ct. at 590 (citations omitted). So we conclude that he did not.

We begin by examining our closest factually analogous precedential opinion, *Bennett v. Murphy*, 274 F.3d 133 (3d Cir. 2002). In *Bennett,* we held that a police officer violated the Fourth Amendment by shooting an armed, suicidal suspect during a prolonged police standoff. *See id.* at 136. We

recounted the facts in *Bennett* by quoting the district court's factual summary:

> The state police were called to the courtyard of a group of apartment buildings on the evening of January 4, 1994 to confront [the suspect], who they soon learned was distraught at being unable to see his girlfriend. He was armed with a single shot shotgun that he held vertically in front of him, with the barrel pointed up at his head, and the stock facing down. He was "very deliberate in holding the gun toward himself or in the air," and did not point the gun at anyone, including state troopers. He stated that he wanted to kill himself. As the troopers took up positions surrounding him in the open area between the apartment buildings, he became agitated and began moving toward a group of them[] but stopped for perhaps four seconds before he was shot. [The police officer defendant] was positioned 80 yards behind [the suspect] when he fired. Almost an hour passed between the time the state troopers first arrived on the scene, and the time [the suspect] was shot.
>
> [The suspect] admittedly was angry and defiant in the face of a group of determined, armed state troopers.

*Id.* at 135 n.2 (alterations in original omitted) (quoting *Bennett v. Murphy*, 127 F. Supp. 2d 689, 690–91 (W.D. Pa. 2000)). The *Bennett* district court also noted that the suspect was around twenty-seven yards from the nearest group of police officers when the defendant shot him. *See* 127 F. Supp. 2d at 691 (describing the suspect as "one third" of eighty yards from the nearest group of officers). And in a later nonprecedential opinion, we observed that the suspect had refused commands to drop his firearm but obeyed other commands. *See Bennett v. Murphy*, 120 F. App'x 914, 917–18 & 918 n.1 (3d Cir. 2005).

Viewing the evidence in the light most favorable to the plaintiff, we opined that the suspect "did not pose a threat to anyone but himself." *Bennett*, 274 F.3d at 136. Thus, we held

11

that the defendant police officer's deadly force was "objectively excessive" in violation of the Fourth Amendment. *Id.*

Three factual differences lead us to conclude that Trooper Bartelt did not violate a clearly established right. First, Trooper Bartelt's pre-standoff knowledge of Gibbons differs from the *Bennett* officer's pre-standoff knowledge of the suspect. Trooper Bartelt was aware of several facts from which he could reasonably conclude that Gibbons posed a threat to others: Gibbons had violated a restraining order; Gibbons was carrying and earlier that evening had brandished a firearm; and Gibbons was reportedly mentally ill and may not have been taking his medication. Each of these facts would lead a reasonable officer entering an encounter with Gibbons to perceive that Gibbons presented an increased risk of harm compared with the suspect in *Bennett*.

Second, Gibbons was much closer to and less compliant with Trooper Bartelt than the suspect in *Bennett*. Gibbons was just seven to fifteen yards from Trooper Bartelt, unlike the suspect in *Bennett* who was eighty yards away from the defendant officer. Trooper Bartelt could not rely on closer officers to give commands to Gibbons and evaluate his compliance. *See Bennett*, 120 F. App'x at 918 n.1 (noting that the suspect was complying with commands from closer officers when the defendant officer shot him). Instead, Trooper Bartelt *was* the closest officer to Gibbons. So when Gibbons ignored Trooper Bartelt's orders to drop his gun, Trooper Bartelt was the officer with the best opportunity to evaluate whether Gibbons posed a threat to others. A reasonable officer would have difficulty concluding that using force against the distant, comparatively compliant, and unknown suspect in *Bennett* was clearly factually analogous to using force against the much-closer, noncompliant Gibbons, whose recent behavior was known to Trooper Bartelt.

Third, Trooper Bartelt's standoff with Gibbons lasted only moments, unlike the nearly hour-long standoff in *Bennett*. Trooper Bartelt's interaction with Gibbons was over within seconds of his arrival on the scene. He necessarily "had mere seconds to assess the potential danger" posed by the armed and non-compliant Gibbons. *See Kisela*, 138 S. Ct. at 1153. The

12

Supreme Court stressed the importance of this kind of temporal difference when conducting the clearly established inquiry. *See id.* at 1154 (distinguishing a case involving a standoff that lasted "roughly 40 minutes" and a case involving a standoff that "unfolded in less than a minute," finding that a constitutional violation in the former did not clearly establish a right that was applicable to the latter). So the substantially shorter duration of Trooper Bartelt's standoff with Gibbons further distinguishes the facts here from those in *Bennett*.

For these reasons, although *Bennett* may be the most analogous precedent from our Court, its holding does not "'squarely govern[]' the specific facts at issue" here. *See id.* at 1151 (citation omitted). And because no other Third Circuit precedent is factually analogous to this case, we conclude that Trooper Bartelt did not violate a clearly established right under our precedent.[6]

## C

Finally, we consider whether Trooper Bartelt violated a right that had been clearly established by a robust consensus of persuasive authority in the Courts of Appeals. The caselaw of

---

[6] Our decision in *Lamont* supports our conclusion that Trooper Bartelt did not violate a clearly established right under our precedent. 637 F.3d 177. There, police officers did not violate the Fourth Amendment by using deadly force against a suspect who made abrupt movements that a reasonable officer could perceive as drawing a firearm. *Id.* at 183–84. *Lamont* shows that if Gibbons had been unarmed but made abrupt movements that an officer could perceive as drawing a firearm, Trooper Bartelt would not have violated clearly established law by using deadly force against him.

Gibbons had already drawn a firearm when Trooper Bartelt shot him. As we explained in *Lamont*, "[p]olice officers do not enter into a suicide pact when they take an oath to uphold the Constitution." *Id.* at 183. Given *Lamont*, we cannot say that *Bennett* "move[s this] case beyond the otherwise 'hazy border between excessive and acceptable force.'" *See Kisela*, 138 S. Ct. at 1153 (citation omitted).

our sister circuits prohibits the use of deadly force against non-threatening suspects, even when they are armed and suicidal.[7] But none of the cases that stand for this general principle involve the "high 'degree of specificity'" required to clearly establish a right under the circumstances Trooper Bartelt faced. *See Wesby*, 138 S. Ct. at 590 (citation omitted).

James argues that several cases from our sister circuits are factually analogous enough to show that Trooper Bartelt violated a clearly established right. *See Weinmann v. McClone*, 787 F.3d 444 (7th Cir. 2015) (denying qualified immunity when an officer used deadly force against an armed suspect); *Cooper v. Sheehan*, 735 F.3d 153 (4th Cir. 2013) (same); *see also Connors v. Thompson*, 647 F. App'x 231 (4th Cir. 2016) (same); *Glenn v. Washington Cty.*, 673 F.3d 864 (9th Cir. 2011) (same). Even if these cases bear some factual similarity to the scenario Trooper Bartelt faced, we do not agree that they create a clearly established right. And in any event, they were all decided *after* the events here (i.e., after May 25, 2011). Thus, they "'could not have given fair notice to [Trooper Bartelt]' because a reasonable officer is not required to foresee judicial decisions that do not yet exist." *See Kisela*, 138 S. Ct. at 1154 (quoting *Brosseau*, 543 U.S. at 200 n.4).

Thus, we conclude that Trooper Bartelt did not violate a right that had been clearly established by a robust consensus of persuasive authority in the Courts of Appeals.

## VI

For these reasons, Trooper Bartelt did not violate a clearly established right by using deadly force against Gibbons. "When properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law.' [Trooper Bartelt] deserves neither label[.]" *See Ashcroft*

---

[7] *See, e.g.*, *Walker v. City of Orem*, 451 F.3d 1139, 1159–61 (10th Cir. 2006) (holding that using deadly force against a suicidal, knife-wielding, and non-threatening suspect violated one of the suspect's constitutional rights); *Mercado v. City of Orlando*, 407 F.3d 1152, 1157–58 (11th Cir. 2005) (same); *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 903 (6th Cir. 1998) (same).

*v. al-Kidd*, 563 U.S. 731, 743 (2011) (citations omitted). The District Court erred by concluding otherwise and denying him qualified immunity.

We will reverse the District Court's orders as to Trooper Bartelt and remand this case with instructions to grant judgment to him based on qualified immunity.